MARGARET M. WEST, CLIFFORD SCOTT, CALEB POYNER, ELWYN WALK-
ER, JAMES O. DUNTON, DONALD ADAMS, SAMUEL H. LAMB,
SAMUEL H. LAMB, II, PAMELA V. WEILAND, PETITIONERS-PLAINTIFFS V.
EARL F. SLICK AND WIFE, JANE P. SLICK, PINE ISLAND DEVELOP-
MENT VENTURE, RDC, INC., RESPONDENTS-DEFENDANTS

No. 771SC147

(Filed 18 January 1983)

1. **Appeal and Error § 26— failure to make assignments of error or grouping of
exceptions—appeal itself as exception to judgment**

    Although the record on appeal disclosed that petitioners failed to make
any assignment of error or grouping of exceptions in violation of App. R.
9(b)(1)(xi), 10(a) and (c), the appeal itself was an exception to the judgment,
App. R. 10(a), and the court's underlying conclusion of law that the evidence
presented by petitioners was insufficient as a matter of law to justify a jury
verdict for them.

2. **Easements § 6.1; Highways and Cartways § 11.2— insufficient evidence to
establish situs of roadways**

    In an action to establish a neighborhood public road under G.S. 136-67 or
in the alternative to establish a public road by prescription or dedication, peti-
tioners' evidence was insufficient as a matter of law to establish the situs of
either roadway, and it is a basic principle of law that in order to create an
easement or public roadway, the evidence must disclose that travel was con-
fined to a definite and specific line.

APPEAL by petitioners from *Ervin, Judge.* Judgment entered
30 September 1976 in Superior Court, PASQUOTANK County,
transferred from CURRITUCK County. Heard in the Court of Ap-
peals 6 December 1982.

In this special proceeding petitioners, owners of real proper-
ty located on the Outer Banks in Currituck County, sought to
establish a neighborhood public road under G.S. 136-67 and a
public road by prescription or by dedication across land owned by
respondents. Respondents are owners of a four-mile strip of land
known as Pine Island, which is bounded on the south by the
Currituck-Dare County line, on the north by private properties,
on the east by the Atlantic Ocean and on the west by Currituck
Sound. At issue is the way of motor vehicular travel on the Outer
Banks from the county line north of Duck, North Carolina, to Cor-
olla, a small fishing village near the North Carolina-Virginia line.

At jury trial petitioners' evidence tended to show that over
the years since the early 1900's, two routes of travel had been

used to traverse the Pine Island property, now owned by respondents. One route, known as the "Inside Road" or "Sound-side Road," was located on the inside of the bank along Currituck Sound. The other route, known as the "Pole Line Road," was located behind the primary sand dune line on the ocean side of the banks. The Pole Line Road was first used by Coast Guard personnel as they performed maintenance on telephone lines connecting Coast Guard Stations. These routes were primitive two-track sand trails that varied according to the ocean's patterns of wave, wind and sand. Travel was permitted along these routes until respondents became the owners of Pine Island and closed the routes to public use in June 1974.

For over fifteen years there was a sign near the Currituck-Dare County line which read "End State Road 500 feet." Although from 1939-1974 State highway maps showed a secondary road 1152 between the County line and Corolla, this road was never located on the ground by a survey. State records indicated that the State had never acquired an easement for the road and had never performed any construction or maintenance work on it.

At the close of petitioners' evidence, the court allowed respondents' motion for directed verdict. The court entered judgment dated 30 September 1976 dismissing the action and ordering that permission heretofore granted by respondents for petitioners to use the road remain in effect pending final determination on appeal of the case.

Although filed in apt time, the calendaring of petitioners' appeal was delayed for over five years, upon the parties' joint motion, pending completion by the Department of Transportation of a plan for public access to the Outer Banks of Currituck County.

*Sanford, Cannon, Adams & McCullough, by Hugh Cannon, J. Allen Adams and Charles C. Meeker for petitioner appellants.*

*Womble, Carlyle, Sandridge & Rice by W. F. Womble and Allan R. Gitter; and Of Counsel, LeRoy, Wells, Shaw, Hornthal, Riley & Shearin, by Dewey W. Wells for respondent appellees.*

BRASWELL, Judge.

[1] The record on appeal discloses that petitioners failed to make any assignment of error or grouping of exceptions, in viola-

tion of App. R. 9(b)(1)(xi), 10(a) and (c). For this reason respondents have moved to dismiss the appeal. We deny respondents' motion to dismiss on the ground that the appeal itself is an exception to the judgment, and in light of App. R. 10(a) which provides:

> "Except as otherwise provided in this Rule 10, the scope of review on appeal is confined to a consideration of those exceptions set out and made the basis of assignments of error in the record on appeal in accordance with this Rule 10. No exception not so set out may be made the basis of an assignment of error; and no exception so set out which is not made the basis of an assignment of error may be considered on appeal. Provided, that upon any appeal duly taken from a final judgment any party to the appeal may present for review, by properly raising them in his brief, the questions whether the judgment is supported by the verdict or by the findings of fact and conclusions of law, whether the court had jurisdiction of the subject matter, and whether a criminal charge is sufficient in law, notwithstanding the absence of exceptions or assignments of error in the record on appeal."

The applicable clause in the rule above is "whether the judgment is supported by . . . the findings of fact and conclusions of law." Technically speaking, the judgment entered in this proceeding contains neither findings nor conclusions. When ruling on a motion for directed verdict in a jury trial, findings of fact and conclusions of law are "not required or appropriate and have no legal significance." *Kelly v. Harvester Co.*, 278 N.C. 153, 159, 179 S.E. 2d 396, 399 (1971). The court's underlying conclusion of law is that the evidence presented by petitioners was insufficient as a matter of law to justify a jury verdict for them.

Petitioners sought to establish a neighborhood public road over respondents' property under G.S. 136-67 or in the alternative to establish a public road by prescription or dedication.

G.S. 136-67 provides in pertinent part:

> "All those portions of the public road system of the State which have not been taken over and placed under maintenance or which have been abandoned by the Department of Transportation, but which remain open and in general use as a necessary means of ingress to and egress

from the dwelling house of one or more families, and all those roads that have been laid out, constructed, or reconstructed with unemployment relief funds under the supervision of the Department of Human Resources, and all other roads or streets or portions of roads or streets whatsoever outside of the boundaries of any incorporated city or town in the State which serve a public use and as a means of ingress or egress for one or more families, regardless of whether the same have ever been a portion of any State or county road system, are hereby declared to be neighborhood public roads . . . ."

Petitioners argue that their evidence established a public road under the first portion of the statute concerning roads which were once a part of the public road system, and also under the third portion concerning roads located outside city limits which serve a public use. In the alternative, petitioners argue that their evidence was sufficient to show that the Inside Road and Pole Line Road were public roads through prescription based upon continuous and open public use of the roads for over twenty years. Petitioners also submit alternatively that the evidence showed an implicit and explicit dedication to the public of the roads from the county line to Corolla.

[2] We do not reach, however, the question of whether petitioners' evidence concerning these four theories was sufficient for submission to the jury. We hold that petitioners' evidence was insufficient as a matter of law to establish the situs of either roadway. It is a basic principle of law that in order to create an easement or public roadway, the evidence must disclose that travel was confined to a definite and specific line. *Speight v. Anderson*, 226 N.C. 492, 39 S.E. 2d 371 (1946); *Cahoon v. Roughton*, 215 N.C. 116, 1 S.E. 2d 362 (1939). While there may be slight deviations in the line of travel, there must be substantial identity of the easement claimed. *Speight v. Anderson, supra; Taylor v. Brigman*, 52 N.C. App. 536, 279 S.E. 2d 82 (1981).

Petitioners' evidence failed to set forth a description which would permit identification and location of the road on the ground with reasonable certainty. Most of the witnesses agreed that the route taken varied according to conditions of wind, rain and tides along the beach. Elwyn Walker, one of the petitioners, testified that at places the track varied between 200 and 300 feet. Peti-

tioners' evidence was disconnected and conflicting concerning the routes each witness followed. Pennell Tillett testified that the road he followed was halfway between the Pole Line and the Sound; Margaret Dowdy testified that at a point south of Pine Island Club she cut across the hard sand of the beach next to the surf. Tillett's testimony exemplifies the confusing nature of much of the testimony concerning location of the road:

> "When the water was low, I went south from Poyner's Hill Coast Guard station along the beach. I would go down as far as Caffey's Inlet, when the tide was low, right along the hard sand next to the surf. At Caffey's Inlet I would cut across at that point. The hard sand, that was pretty well on the back. The soft sand was up near the ocean, and there were pebbles there too. When you got on top of the hill, it was still soft and you had to go a little farther back where it was harder. The road was tracks through the sand and you had to sort of work your way through from the ocean side across to Caffey's Inlet when you got down there."

Although petitioners introduced a road map by the North Carolina State Highway Commission and county maps which showed a line for a road from Duck to Corolla, it is impossible to determine on the maps which road is the Pole Line Road and which is the Inside Road. In addition, the testimony of those who had traveled along the roadways cannot be reconciled with the physical evidence. D. W. Patrick, a survey engineer with the Department of Transportation had examined the exhibits and testified:

> "I have been pursuing the practice of engineering for some 30 years and I would have to say that there is no way you can determine where on the ground any 11.7 miles of roadway is located that is referred to in these exhibits. You couldn't tell whether it was on the surf or down the middle of the beach, or along each side of the pole line, or next to the sound side. All I can say is that it was on the land mass someplace between Currituck Sound and the Atlantic Ocean."

Petitioners' Exhibit No. 10 is an aerial map of Pine Island. David Lawrence, a survey engineer, stated that he could identify the two routes on the aerial map. The routes are clearly visible in some areas while impossible to discern in others, but generally

are pointed out. State records indicate that no survey of the ground for the purpose of locating or constructing a road was ever performed. We believe that identification of any road would rest in speculation and conjecture, which the law does not permit. *Adams v. Severt,* 40 N.C. App. 247, 252 S.E. 2d 276 (1979).

We hold, therefore, that petitioners' evidence failed as a matter of law to identify specific and definite lines or routes of use, and for this failure to locate the roadway on the ground, the court's judgment allowing respondents' motion for directed verdict must be affirmed.

Affirmed.

Judges ARNOLD and JOHNSON concur.