DONALD NELSON AND DINAH NELSON, PLAINTIFFS v. HARTFORD UNDERWRITERS INSURANCE COMPANY, SHARPE HOME CONCEPTS, INC. AND ARS MERGER INC., DEFENDANTS

No. COA05-1052

(Filed 6 June 2006)

**1. Appeal and Error— preservation of issues—assignments of error—sufficiency**

The trial court did not err in a breach of insurance contract and violation of Unfair Claims Settlement Practices statute case by concluding that plaintiffs' assignments of error do not violate N.C. R. App. P. 10(c)(1), because: (1) the assignment of error with respect to the order granting summary judgment is sufficient when the

appellate rules do not require a party against whom summary judgment has been entered to place exceptions and assignments of error in the record on appeal since the notice of appeal adequately notifies the opposing party and the appellate court of the limited issues to be reviewed; and (2) although the assignment of error regarding the trial court's granting in part defendant's motion to dismiss plaintiffs' claim is deficient, its deficiency does not prevent a review of the factual and legal conclusions made by the October 2004 order since the assignment of error regarding the summary judgment order is valid and requires a review of the factual and legal conclusions made in the motion to dismiss.

**2. Appeal and Error— preservation of issues—appellate rules violations—no details in index**

The Court of Appeals invoked Rule 2 to address the merits of plaintiffs' appeal in a breach of insurance contract and violation of Unfair Claims Settlement Practices statute case despite an index filled with numerous violations of N.C. R. App. P. 9(a)(1)(a), because defendant, who thoroughly responded to plaintiffs' arguments on appeal, was put on sufficient notice of the issues on appeal.

**3. Insurance— homeowners—breach of insurance contract claim—mold—date of defect**

The trial court did not err by granting summary judgment in favor of defendant insurance company on plaintiffs' claim for breach of a homeowners insurance contract based on a denial of coverage for a mold claim, because: (1) even in situations where damage continues over time, if the court can determine when the defect occurred from which all subsequent damages flow, the court must use the date of the defect and trigger the coverage applicable on that date; (2) the dates for the three causes of the mold occurred prior to the start of the coverage period of the pertinent insurance policy; and (3) although the harm suffered by plaintiffs in the form of mold in their home may have been discovered and continued during the policy period of defendant's policy, the manifestation of the harm is not the trigger date.

**4. Insurance— unfair claims settlement practices—denial of insurance coverage for mold in home—proximate cause of injury**

The trial court did not err by concluding that defendant insurance company did not commit unfair and deceptive claim settle-

NELSON v. HARTFORD UNDERWRITERS INS. CO.

[177 N.C. App. 595 (2006)]

ment practices with regard to their homeowners insurance claim even though plaintiffs contend defendant's actions prevented them from gaining full knowledge of the extent of the mold in their home, slowed their remediation, and precluded them from asserting a claim against their previous insurer, because: (1) defendant's denial of coverage letter did not misrepresent its insurance policy; (2) the October 2001 letter provided a reasonable explanation for defendant's denial of the claim on its mold and faulty workmanship exceptions, and the omission of a third ground for denial does not make the explanation unreasonable; (3) plaintiffs cannot show an unfair or deceptive trade practice concerning adoption and implementation of reasonable standards without providing evidence; (4) having a local engineering firm conduct an investigation and produce a report was neither unscrupulous nor unethical, and did not deceive plaintiffs as to whether mold was present in the home; (5) defendant's reinvestigation of plaintiffs' earlier mold claim was neither unfair nor deceptive, and the reinvestigation was made within a reasonable time; (6) plaintiffs cannot show how any of defendant's actions were the proximate cause of their injury from mold contamination; (7) even if defendant's actions slowed the remediation, those actions slowed only the response to the injury and did not cause the injury itself; and (8) plaintiffs' contention that defendant's actions precluded them from bringing a claim against their previous insurer is not persuasive when defendant bore no duty to instruct plaintiffs regarding whom to sue and when. N.C.G.S. § 58-63-15(11).

Appeal by plaintiffs from judgment entered 14 March 2005 by Judge Giles R. Clark in Durham County Superior Court. Heard in the Court of Appeals 10 April 2005.

*Everett, Gaskins, Hancock & Stevens, LLP, by E.D. Gaskins, Jr., Ashley Matlock, and Michael J. Tadych, for plaintiffs-appellants.*

*Womble Carlyle Sandridge & Rice, PLLC, by Douglas W. Hanna, for defendant-appellee.*

MARTIN, Chief Judge.

Plaintiffs, Donald and Dinah Nelson, brought this action against their homeowner's insurance carrier, Hartford Underwriters Insurance Company (Hartford), alleging claims for breach of an insurance contract and a violation of the Unfair Claims Settlement Practices statute. Hartford answered, denying the allegations of the complaint, and moved

to dismiss. The motion to dismiss was granted in part and denied in part. Hartford subsequently moved for summary judgment as to Hartford's remaining claims.

Evidence before the trial court showed that plaintiffs purchased a new home in September 1996. By October 1996, plaintiffs noticed an unusual odor in the house, and by March 1997, they could smell a musty odor in the master bedroom and bathroom which they now know to be mold.

Plaintiffs and Hartford agree the mold in the house had three causes. First, an oversized heating, ventilating, and air conditioning (HVAC) system was installed in the home during its construction, which failed to remove all of the humidity from the air. Second, in June 1997, plaintiffs noticed the water supply line to their Jacuzzi had a leak. The leak was caused by the homebuilder's plumbing subcontractor, who, while in the process of fixing a mistake in the hot- and cold-water lines, created a leak allowing water to seep from the water connection and wetting the floor and wall between the Jacuzzi and the master and guest bedrooms. The plumbing contractor did not replace the water damaged materials, and did not apply any chemical treatment to the wet area. Third, in late 1998 or early 1999, plaintiffs found wet carpet in their guest bedroom, which was located adjacent to the master bathroom. The plumbing subcontractor found a nail penetrating the shower boot in the master bathroom, allowing water to leak out of the shower stall. The shower boot and a small area of carpet pad were replaced, but the wet carpet, subflooring, and wall between the rooms were not replaced.

Plaintiffs terminated their insurance policy with their previous insurer in early 1999, and Hartford issued its first insurance policy to plaintiffs on 14 May 1999. The policy ran from 14 May 1999 to 14 May 2000, and for another 12-month period upon each renewal. The policy covered losses that occurred during the "policy period" and not otherwise excluded:

SECTIONS I AND II—CONDITIONS

1. Policy Period. This policy applies only to loss in Section I . . ., which occurs during the policy period.

The policy contained an exclusion for mold:

SECTION I—PERILS INSURED AGAINST

. . . We do not, however, insure for loss:

. . .

**NELSON v. HARTFORD UNDERWRITERS INS. CO.**

[177 N.C. App. 595 (2006)]

2. Caused by:

. . .

e. Any of the following:

. . .

(3) Smog, rust or other corrosion, mold, wet or dry rot[.]

The policy also contained an exclusion for faulty workmanship:

SECTION I—EXCLUSIONS

. . .

2. We do not insure for loss to property described in Coverages A and B caused by any of the following.

. . .

c. Faulty, inadequate or defective:

. . .

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction[.]

Plaintiffs called Hartford and made a mold claim on either 13 June 2001 or 13 September 2001. Although the date of the claim is disputed by the parties, with Hartford providing electronic records in support of the later date, the date is not material. A Hartford adjuster interviewed the plaintiffs on 18 September 2001, and then Hartford had a local engineering firm, Marshall Miller & Associates ("MMA"), inspect the Nelsons' home. MMA spoke to Dinah Nelson, and inspected the home for mold. Plaintiffs did not mention to MMA the water leaks from the shower and Jacuzzi. MMA produced a report, finding evidence of mold on the carpeting, curtains, and floor materials in the vicinity of the HVAC vents. The report concluded the mold conditions were "associated with the operation of the ventilation system and were not associated with some other event." According to the report, the home had an oversized HVAC system which might "short-cycle," causing the house to cool down very quickly and preventing it from extracting sufficient moisture out of the air during the cooling system.

After receiving the MMA report, Hartford denied coverage of the mold claim. In a letter dated 12 October 2001, defendant cited the mold exception and the faulty workmanship exception as the reasons for denial. The letter also expressly reserved Hartford's right to assert other rights or defenses to the claim.

NELSON v. HARTFORD UNDERWRITERS INS. CO.

[177 N.C. App. 595 (2006)]

Plaintiffs had the HVAC unit replaced in March 2002, but the mold around the HVAC vents did not immediately diminish. Also in March 2002, plaintiffs made a second claim to Hartford regarding the mold. In making this claim, Dinah Nelson called Hartford and asked whether the water leaks, which she had not previously mentioned to Hartford, could possibly change Hartford's denial of their first claim.

On 16 May 2002, the insurance carrier for the home's general contractor produced a report confirming the presence of mold in the home. The report found several types of mold, and the insurance carrier called plaintiffs and suggested they move out of the house. In late May, plaintiffs moved out.

Hartford sent MMA to conduct a second inspection of plaintiffs' home on 15 May 2002. This inspection was more extensive than the fall 2001 inspection, and included removing carpet and examining the subflooring to look for water damage. MMA produced a report on 17 July 2002, finding mold in the house and concluding that the shower leak and its subsequent repair was the likely cause of the mold, which was then circulated in the house by the HVAC system. Hartford received the report and began its review to determine whether its insurance policy covered the mold claim.

On 5 August 2002, Hartford received a letter from the Nelsons' legal counsel directing Hartford to have no further contact with plaintiffs. Plaintiffs filed suit on 6 September 2002 against several defendants, including the general contractor, several subcontractors, and Hartford. Hartford moved to dismiss, which the trial court granted, in part, on 11 October 2004, as to all claims for breach of contract "in which the event or occurrence that gave rise to the claim predates the issuance of the Policy on May 14, 1999." The trial court also granted the motion, in part, as to all claims for breach of contract excluded by the faulty workmanship exclusion in the contract.

Hartford's motion for summary judgment as to plaintiffs' remaining claims was granted. Plaintiffs settled their claims with the other defendants, and now appeal the grant of summary judgment to Hartford.

### I. Motion to dismiss the appeal

[1] Hartford has moved to dismiss the appeal, asserting that plaintiffs' assignments of error violate North Carolina Rule of Appellate Procedure 10(c)(1) because they fail to "state plainly . . . the legal basis upon which error is assigned." Plaintiffs' assignments of error in the record are:

1. The Durham County Superior Court's Order Granting in Part Defendant Hartford's Motion to Dismiss, dated October 11, 2004, and filed on October 14, 2004.

2. The Durham County Superior Court's Order Granting Defendant Hartford's Motion for Summary Judgment, dated March 7, 2005, and filed March 14, 2005.

Defendant contends these assignments of error fail to raise factual or legal issues for appeal, and therefore fail to give notice to defendant and prejudice the case on appeal.

We note that a recent opinion of this Court may appear to state a new rule regarding the sufficiency of an assignment of error to an order of summary judgment. In *Hubert Jet Air, LLC v. Triad Aviation, Inc.*, 177 N.C. App. 445, —— S.E.2d —— (2006), the panel dismissed a plaintiff's appeal from an order granting partial summary judgment because it deemed the assignment of error to be insufficient. The assignment of error stated: "The trial court's partial granting of the Defendants' Motion for Summary Judgment as to Counts 3 through 8." According to the panel, such an assignment of error does not comply with Rule 10 of the North Carolina Rules of Appellate Procedure.

A contrary rule, however, is well-established by the precedents of this Court and our Supreme Court. More than twenty years ago, this Court held in *Vernon, Vernon, Wooten, Brown & Andrews, P.A. v. Miller*, 73 N.C. App. 295, 326 S.E.2d 316 (1985):

We observe first that defendant did not set out, in the record on appeal, any exceptions or specific assignments of error as required by Rule 10(a) of the Rules of Appellate Procedure. We conclude, however, that none is required where, as here, the sole question presented in defendant's brief is whether the trial court erred in granting summary judgment in favor of the plaintiff. The appeal from the judgment is itself an exception thereto.

*Id.* at 297, 326 S.E.2d at 319 (citing *West v. Slick*, 60 N.C. App. 345, 299 S.E.2d 657 (1983)). Recently, this Court stated:

An appeal from an order granting summary judgment raises only the issues of whether, on the face of the record, there is any genuine issue of material fact, and whether the prevailing party is entitled to a judgment as a matter of law. Therefore, the notice of appeal suffices as an assignment of error directed to the order of summary judgment.

*Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C. App. 349, 353, 595 S.E.2d 778, 782 (2004) (citing *Ellis v. Williams*, 319 N.C. 413, 415, 355 S.E.2d 479, 481 (1987) and *Vernon, Vernon, Wooten, Brown & Andrews, P.A. v. Miller*, 73 N.C. App. 295, 297, 326 S.E.2d 316, 319 (1985)); *see also Groves v. Cmty. Hous. Corp.*, 144 N.C. App. 79, 83, 548 S.E.2d 535, 538 (2001) ("The plaintiff does not set forth any assignments of error in the record on appeal; however, such assignments are not required where the question presented is whether summary judgment was properly granted."); *Robinson, Bradshaw & Hinson, P.A. v. Smith*, 129 N.C. App. 305, 319, 498 S.E.2d 841, 851-52 (1998) ("However, the appellate rules do not require a party against whom summary judgment has been entered to place exceptions and assignments of error into the record on appeal. On appeal, without exceptions and assignments of error, the notice of appeal to a summary judgment is necessarily limited to whether the trial court's conclusions were correct ones. Thus, notice of appeal adequately notifies the opposing party and the appellate court of the limited issues to be reviewed.") (citations omitted).

Our Supreme Court also has definitively addressed this issue. In *Ellis v. Williams*, 319 N.C. 413, 355 S.E.2d 479 (1987), the Supreme Court reversed the Court of Appeals when it dismissed an appeal because the appellant had failed to list any exceptions or assignments of error to a summary judgment order. The Supreme Court held:

> The purpose of summary judgment is to eliminate formal trial when the only questions involved are questions of law. Thus, although the enumeration of findings of fact and conclusions of law is technically unnecessary and generally inadvisable in summary judgment cases, summary judgment, by definition, is always based on two underlying questions of law: (1) whether there is a genuine issue of material fact and (2) whether the moving party is entitled to judgment. On appeal, review of summary judgment is necessarily limited to whether the trial court's conclusions as to these questions of law were correct ones. It would appear, then, that notice of appeal adequately apprises the opposing party and the appellate court of the limited issues to be reviewed. Exceptions and assignments of error add nothing.

> This result does not run afoul of the expressed purpose of Rule 10(a). Exceptions and assignments of error are required in most instances because they aid in sifting through the trial court record and fixing the potential scope of appellate review. We note that the appellate court must carefully examine the entire record in review-

ing a grant of summary judgment. Because this is so, no preliminary "sifting" of the type contemplated by the rule need be performed. Also, as previously observed, the potential scope of review is already fixed; it is limited to the two questions of law automatically raised by summary judgment. Under these circumstances, exceptions and assignments of error serve no useful purpose. Were we to hold otherwise, plaintiffs would be required to submit assignments of error which merely restate the obvious; for example, "The trial court erred in concluding that no genuine issue of material fact existed and that defendants were entitled to summary judgment in their favor." At best, this is a superfluous formality.

*Id.* at 415-16, 355 S.E.2d at 481 (citations omitted). The Supreme Court reversed the Court of Appeals and remanded for the court to review the case on its merits. *Id.* at 417, 355 S.E.2d at 482.

This Court is required to follow the decisions of our Supreme Court, as well as our prior precedents. Although the Supreme Court's recent decision in *Viar v. N.C. DOT*, 359 N.C. 400, 610 S.E.2d 360 (2005), *reh'g denied*, 359 N.C. 643, 617 S.E.2d 662 (2005), directed this Court not to create an appeal for the appellant, and to ensure an appellee has notice of the basis upon which an appellate court might rule, we think the reasoning of *Viar* and *Ellis* are compatible. In any case, *Viar* does not address the issue of assignments of error and summary judgment, and does not overrule *Ellis*. Accordingly, we follow *Ellis* and the precedents of this Court, and determine that plaintiffs' assignment of error with respect to the order granting summary judgment is sufficient. We therefore deny Hartford's motion to dismiss the assignment of error.

Plaintiffs' assignment of error regarding the trial court's granting in part Hartford's motion to dismiss plaintiffs' claim, however, is deficient. In *Wetchin v. Ocean Side Corp.*, 167 N.C. App. 756, 758-59, 606 S.E.2d 407, 409 (2005), the trial court had granted defendant's motion to dismiss and plaintiffs appealed. Plaintiffs' assignment of error read: "The ruling of the trial court in its Order of Dismissal entered on May 13, 2003." This Court held:

Plaintiffs' assignment of error fails to state the legal basis upon which error is assigned and is not confined to a single issue of law. Rather, the assignment is a broadside attack on the trial court's order, not specifying which of the court's three rulings was erroneous. . . . It is an improper assignment of error.

*Id.* at 759, 606 S.E.2d at 409.

Here, although plaintiffs' assignment of error concerning the motion to dismiss is deficient, its deficiency nevertheless does not prevent our review of the factual and legal conclusions made by the October 2004 order. The May 2005 summary judgment order was necessarily predicated, in part, on the factual and legal conclusions reached by the October 2004 order. Therefore, the summary judgment order is premised upon, and encompasses, the preceding motion to dismiss. When reviewing the summary judgment order to determine whether there were genuine issues of material fact, and whether defendant was entitled to judgment as a matter of law, we cannot refrain from reviewing the factual and legal conclusions made in the motion to dismiss.

Because the assignment of error regarding the summary judgment order is valid, it suffices to allow our review of the factual and legal issues decided in the motion to dismiss.

[O]ne assignment of error and argument would have sufficed because the three rulings involved essentially the same question of law. . . . As Rules 10(c) and 28(b), N.C. Rules of Appellate Procedure, clearly indicate one assignment of error is enough to raise one question of law even when it questions the correctness of many rulings by the trial court . . . .

*Pate v. Thomas*, 89 N.C. App. 312, 314, 365 S.E.2d 704, 705 (1988). Here, the motion to dismiss and summary judgment orders both concern the scope of the insurance contract, and therefore involve essentially the same question of law. Accordingly, the assignment of error to the summary judgment order serves to raise the issues of material fact and questions of law decided by the October 2004 order granting, in part, Hartford's motion to dismiss.

## II. Appellate Rule 9(a)(1)(a)

[2] Our review in this case is made more difficult because the index of the record is sparsely detailed and includes errors in pagination. Rule 9(a)(1)(a) of the North Carolina Rules of Appellate Procedure requires the record on appeal in civil actions to contain an index of the contents of the record. The index here stretches hundreds of pages without detailing the contents of the record. For example, from pages 6 to 121, the record contains plaintiffs' third amended complaint and accompanying exhibits, with no index delineating page numbers for the various exhibits. From pages 139 to 534, the record includes Hartford's exhibits to its brief in support of summary judgment, a span of nearly 400 pages without any detail in the index of where one exhibit ends and another

starts. Similarly, from pages 535 to 731 the record includes plaintiffs' exhibits to their brief opposing summary judgment, and from pages 732 to 825 the record includes Hartford's exhibits to its reply brief, a combined stretch of nearly 300 pages without any more specific delineation. An index without sufficient detail ceases to be an index. When approximately 800 pages of the record have essentially no detail in the index, the practical effect is to have no index.

Other mistakes mar the record itself. Between pages 726 and 727 in the record, and again between pages 727 and 728, at least two pages are missing from defendant's answers to plaintiffs' interrogatories. Similarly, at pages 820 and 821, a page is missing from the plaintiffs' answers to defendant's interrogatories. Elsewhere, the record itself is mispaginated. For example, pages 315-16, 317-18, 319-20, and 321-24 have reversed the order of pages in transcripts of depositions, so that a reader must read backwards through the pages.

We find these errors in violation of Appellate Rule 9(a)(1)(a). Our Supreme Court has held "[t]he North Carolina Rules of Appellate Procedure are mandatory and 'failure to follow these rules will subject an appeal to dismissal.' " *Viar*, 359 N.C. at 401, 610 S.E.2d at 360 (quoting *Steingress v. Steingress*, 350 N.C. 64, 65, 511 S.E.2d 298, 299 (1999)). Despite the faulty index, however, we can determine the issues on appeal, and note that Hartford, which thoroughly responded to plaintiffs' arguments on appeal, was put on sufficient notice of the issues on appeal. *Youse v. Duke Energy Corp.*, 171 N.C. App. 187, 192, 614 S.E.2d 396, 400 (2005). The violation of Appellate Rule 9(a)(1)(a) "is not substantive nor egregious enough to warrant dismissal of plaintiffs' appeal." *Coley v. State*, —— N.C. App. ——, 620 S.E.2d 25, 27 (2005). We therefore "invoke [Appellate] Rule 2 and address the merits of plaintiffs' appeal." *Id.* (considering *Viar* and concluding "[t]he decision by this Court not to dismiss the present case for minor rules violations does not lead us to 'create an appeal for an appellant' or to examine any issues not raised by the appellant"); *see also Youse*, 171 N.C. App. at 192, 614 S.E.2d at 400 ("Since plaintiff's Rules violations are not 'so egregious as to invoke dismissal,' . . . we elect to review the significant issues of this appeal pursuant to N.C.R. App. P. 2.") (citation omitted).

### III.  Breach of contract

[3] We review *de novo* a trial court's grant of both a motion to dismiss and of summary judgment. *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4 (2003), *aff'd*, 357 N.C. 567, 597 S.E.2d 673 (2003); *Stafford v. County of Bladen*, 163 N.C. App. 149,

151, 592 S.E.2d 711, 713 (2004), *disc. review denied*, 358 N.C. 545, 599 S.E.2d 409 (2004).

For a breach of contract claim, a plaintiff must show a valid contract existed, and a breach of its terms. *Jackson v. Carolina Hardwood Co.*, 120 N.C. App. 870, 871, 463 S.E.2d 571, 572 (1995). Here, the parties do not dispute the validity of the contract, but only whether the contract was breached.

When examining whether an insurance policy is breached, we begin with the "well-settled principle that an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *Fid. Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986) (citing *Harrelson v. State Farm Mut. Auto. Ins. Co.*, 272 N.C. 603, 609, 158 S.E.2d 812, 817 (1968)). The insured party "has the burden of bringing itself within the insuring language of the policy." *Hobson Constr. Co., Inc. v. Great Am. Ins. Co.*, 71 N.C. App. 586, 590, 322 S.E.2d 632, 635 (1984) (citing *Nationwide Mut. Fire Ins. Co. v. Allen*, 68 N.C. App. 184, 188, 314 S.E.2d 552, 554 (1984)), *disc. review denied*, 313 N.C. 329, 327 S.E.2d 890 (1985). To determine whether coverage exists, we compare the complaint with the policy to see if the allegations describe facts which appear to fall within the insurance coverage. *Prod. Sys., Inc. v. Amerisure Ins. Co.*, 167 N.C. App. 601, 605, 605 S.E.2d 663, 665 (2004), *disc. review denied*, 359 N.C. 322, 611 S.E.2d 416 (2005). "Once it has been determined that the insuring language embraces the particular claim or injury, the burden then shifts to the insurer to prove that a policy exclusion excepts the particular injury from coverage." *Hobson*, 71 N.C. App. at 590, 322 S.E.2d at 635.

Plaintiffs argue defendant breached its insurance contract with them when defendant denied coverage for their mold claim. Defendant responds by contending the events that caused plaintiffs' loss occurred between 1996 and early 1999, before defendant issued its insurance policy in May 1999, and therefore the policy does not cover plaintiffs' loss.

In *Gaston County Dyeing Machine Co. v. Northfield Insurance Co.*, 351 N.C. 293, 303, 524 S.E.2d 558, 564 (2000), our Supreme Court held, "where the date of the injury-in-fact can be known with certainty, the insurance policy or policies on the risk on that date are triggered." Instead of examining when the harm manifested, "we look to the *cause* of the property damage rather than to the effect." *Id.* at 303, 524 S.E.2d at 565 (emphasis added). The Supreme Court specifically overruled a previous Court of Appeals decision which held that

"for insurance purposes, property damage 'occurs' when it is mani-·fested or discovered." *Id.*

Following *Gaston County*, this Court held that if we "can determine when the injury-in-fact occurred, the insurance policy available at the time of the injury controls." *Hutchinson v. Nationwide Mut. Fire Ins. Co.*, 163 N.C. App. 601, 604, 594 S.E.2d 61, 63 (2004). Accordingly, "even in situations where damage continues over time, if the court can determine when the defect occurred from which all subsequent damages flow, the court must use the date of the defect and trigger the coverage applicable on that date." *Id.* at 605, 594 S.E.2d at 64; *accord Harleysville Mut. Ins. Co. v. Berkley Ins. Co.*, 169 N.C. App. 556, 560, 610 S.E.2d 215, 217 (2005).

Here, the injury suffered by plaintiffs was from mold contamination. Plaintiffs testified, and Hartford agrees, the mold had three causes: (1) an oversized HVAC system, installed when the house was built in 1996; (2) a leak in the water supply line to their Jacuzzi, discovered in June 1997; and (3) a leak in the shower boot in the master bathroom, discovered in late 1998 or early 1999. The coverage period of the insurance policy issued by Hartford began in May 1999, and therefore each of these three defects occurred prior to the start of the coverage period. Although the harm suffered by plaintiffs, in the form of mold in their home, may have been discovered, and have continued, during the policy period of defendant's policy, our Supreme Court in *Gaston County* specifically disavowed using the manifestation of the harm as the trigger date. *Id.* at 303, 524 S.E.2d at 565. Instead, even though the mold damage continued over time, we can determine when the defects occurred from which all subsequent damages flowed, and we must use the dates of these defects and trigger the coverage applicable on that date. *Hutchinson*, 163 N.C. App. at 605, 594 S.E.2d at 64. Thus, Hartford's policy was not in effect on the trigger date of the injuries and therefore was not "on the risk" at that point in time. *Gaston County*, 351 N.C. at 303, 524 S.E.2d at 564.

Accordingly, since the harms suffered by the plaintiffs did not fall within the policy period of defendant's policy, plaintiffs have not brought themselves "within the insuring language of the policy." *Hobson*, 71 N.C. App. at 590, 322 S.E.2d at 635. Defendant consequently does not bear the burden of proving that "a policy exclusion excepts the particular injury from coverage," *id.*, and we need not determine whether the mold or faulty workmanship exclusions also would bar plaintiffs' mold claim. Because the injuries causing the mold in plaintiffs' home occurred prior to commencement of the insurance policy, we

hold defendant did not breach its contract when it denied plaintiffs' mold claim. Defendant was entitled to judgment as a matter of law, and we affirm the trial court's grant of summary judgment.

## IV. Unfair Claims Settlement Practices

[4] Trade practices in the insurance business are regulated by Chapter 58, Article 63 of the North Carolina General Statutes. N.C. Gen. Stat. § 58-63-1 (2005). Unfair and deceptive trade practices are prohibited generally, N.C.G.S. § 58-63-10 (2005), and unfair and deceptive claim settlement practices are prohibited specifically, N.C.G.S. § 58-63-15(11) (2005).

Plaintiffs claim Hartford committed several unfair and deceptive claim settlement practices, including: misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue, N.C.G.S. § 58-63-15(11)(a); failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies, N.C.G.S. § 58-63-15(11)(c); refusing to pay claims without conducting a reasonable investigation based upon all available information, N.C.G.S. § 58-63-15(11)(d); failing to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements have been completed, N.C.G.S. § 58-63-15(11)(e); and, failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or the offer of a compromise settlement, N.C.G.S. § 58-63-15(11)(n). Plaintiffs argue that Hartford's actions in this case prevented them from gaining full knowledge of the extent of the mold in their home and therefore slowed their remediation, and also precluded them from asserting a claim against their previous insurer.

Although N.C.G.S. § 58-63-15(11) states "no violation of this subsection shall of itself create any cause of action in favor of any person," a plaintiff's remedy for violation of the unfair claim settlement practices statute is the filing of a claim pursuant to N.C.G.S § 75-1.1, the unfair or deceptive practices statute. *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 71, 529 S.E.2d 676, 683 (2000) (holding "conduct that violates subsection (f) of N.C.G.S. § 58-63-15(11) constitutes a violation of N.C.G.S. § 75-1.1, as a matter of law"); *Country Club of Johnston County, Inc. v. U.S. Fid. & Guar. Co.*, 150 N.C. App. 231, 246, 563 S.E.2d 269, 279 (2002) ("It follows that the other prohibited acts listed in N.C. Gen. Stat. § 58-63-15(11) are also acts which are unfair, unscrupulous, and injurious to consumers, and that such acts therefore fall within the 'broader standards' of N.C. Gen. Stat. § 75-1.1."). "[*T*]*he* remedy for a vio-

lation of section 58-63-15 is the filing of a section 75-1.1 claim." *Country Club of Johnston County, Inc.*, 150 N.C. App. at 244, 563 S.E.2d at 278 (emphasis in original) (quoting *Lee v. Mut. Cmty. Sav. Bank*, 136 N.C. App. 808, 811 n.2, 525 S.E.2d 854, 857 n.2 (2000)). Plaintiffs pursuing an unfair claim settlement practices violation under N.C.G.S. § 75-1.1 need only show a single violation affecting them, and do not need to make an additional showing of a defendant's frequency of violations indicating a general business practice. *Gray*, 352 N.C. at 71, 529 S.E.2d at 683.

Causes of action for unfair or deceptive practices are distinct from breach of contract actions. *Boyd v. Drum*, 129 N.C. App. 586, 593, 501 S.E.2d 91, 97 (1998), *aff'd per curiam*, 350 N.C. 90, 511 S.E.2d 304 (1999). An action for unfair or deceptive practices is a creation of statute, and therefore *sui generis*, so the cause of action exists independently, regardless of whether a contract was breached. *Bernard v. Cent. Carolina Truck Sales, Inc.*, 68 N.C. App. 228, 230, 314 S.E.2d 582, 584 (1984), *disc. review denied*, 311 N.C. 751, 321 S.E.2d 126-27 (1984). Thus, even if an insurance company rightly denies an insured's claim, and therefore does not breach its contract, as here, the insurance company nevertheless must employ good business practices which are neither unfair nor deceptive.

To establish a violation of N.C.G.S. § 75-1.1, plaintiffs "must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Gray*, 352 N.C. at 68, 529 S.E.2d at 681 (citing N.C. Gen. Stat. § 75-1.1 and *First Atl. Mgmt. Co. v. Dunlea Realty Co.*, 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998)). The second element, that the act or practice be "in or affecting commerce," is not at issue in this case.

"A practice is unfair if it is unethical or unscrupulous." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001); *see also Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981) ("A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."). A practice is deceptive "if it has a tendency to deceive," *Dalton*, 353 N.C. at 656, 548 S.E.2d at 711, but "proof of actual deception is not required," *Marshall*, 302 N.C. at 548, 276 S.E.2d at 403. The question of what constitutes an unfair or deceptive trade practice is an issue of law. *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 363, 533 S.E.2d 827, 830 (2000), *disc. review denied*, 353 N.C. 262, 546 S.E.2d 93 (2000). If the material facts are not disputed, the court should determine whether the defendant's conduct constituted an unfair or deceptive trade practice. *Id.*

Plaintiffs first argue, under N.C.G.S. § 58-63-15(11)(a), that Hartford misrepresented pertinent facts or insurance policy provisions relating to coverages at issue. Specifically, plaintiffs contend Hartford denied coverage of the mold claim only under Section I, Coverages A and B of the policy, and failed to address liability under Section I, Coverages C and D. Plaintiffs also contend Hartford did not state in-its denial letter that it based its denial on the fact that the events giving rise to the mold contamination occurred before the effective date of the policy. For these reasons, plaintiffs argue Hartford misrepresented the insurance policy provisions relating to coverages.

Hartford's October 2001 letter denying coverage of plaintiffs' mold claim focused on Coverages A and B of the policy. In pertinent part, the letter stated:

Please refer to your Homeowner's policy under Section 1—Perils Insured Against, which states:

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not, however, insure for loss:

2. Caused by:

e. Any of the following:

(3) Smog, rust or other corrosion, mold, wet or dry rot;

The policy goes on to state under Section 1—Exclusions:

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

c. Faulty, inadequate, or defective:

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction.

As a result, we will be therefore, be unable [*sic*] to honor your claim. We expressly reserve our right to assert all other rights or defenses that we may have to this claim even though not enumerated above. We are neither waiving nor relinquishing any of our rights under the policy of insurance.

This denial of coverage letter did not misrepresent Hartford's insurance policy. Coverage C under Section I of the insurance policy concerns

claims submitted for damage of personal property, but it requires a "peril" that triggers such coverage, such as an explosion, theft, volcanic eruption, aircraft crash, or windstorm. Mold was not listed as a peril, and thus Coverage C was not applicable. Coverage D concerns "loss of use" of the home. At the time plaintiffs made the claim, and at the time Hartford denied the claim, plaintiffs resided in the home and had not made a claim for loss of use. Thus, Coverage D was not applicable. Finally, Hartford made no misrepresentation of its policy when the denial letter did not mention denial based upon events occurring before the effective date of the policy. Hartford's letter expressly reserved the right to assert other rights or defenses it had to the claim. The October 2001 denial letter was not unethical or unscrupulous, nor did it have the tendency to deceive plaintiffs, and therefore it was neither unfair nor deceptive.

Second, similar to their claim under N.C.G.S. § 58-63-15(11)(a), plaintiffs contend Hartford failed to provide a reasonable explanation of the basis in the policy for denial of the claim pursuant to N.C.G.S. § 58-63-15(11)(n), because Hartford did not base its denial on the fact that the events causing the mold occurred before the effective date of the policy. But Hartford's denial of the claim on its mold and faulty workmanship exceptions were reasonable, and the omission of a third ground for denial does not make the explanation unreasonable. The October 2001 letter provided a reasonable explanation for the denial of coverage, and was not unfair or deceptive.

Third, plaintiffs argue Hartford failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies, pursuant to N.C.G.S. § 58-63-15(11)(c). Plaintiffs produced no evidence regarding Hartford's adoption or implementation of standards for investigation of claims other than a two-sentence answer Hartford provided to plaintiffs' interrogatories: "All residential property damage claims are handled in the same manner. The defendant confirms coverage, conducts an investigation, evaluates the claim, and takes appropriate action on the claim." With no further evidence provided on this claim, plaintiffs cannot show an unfair or deceptive trade practice concerning adoption and implementation of reasonable standards.

Fourth, plaintiffs argue Hartford failed to conduct a reasonable investigation based upon all available information, pursuant to N.C.G.S. § 58-63-15(11)(d). Plaintiffs contend the investigation of their 2001 claim was unreasonable because it did not discover the water leaks, and because MMA did not submit the mold samples for identification of the

type of mold present. The investigation, conducted by MMA on behalf of Hartford, determined that the mold was caused by an oversized HVAC. system. Hartford's purpose in having MMA perform an investigation, and produce a report, was to determine whether mold was present in the house, and if so, whether the policy covered the mold contamination. The purpose of the report was not, however, to determine all the possible causes of the mold contamination, or to determine the types of mold present. Thus, the MMA report served Hartford as a reasonable investigation of whether mold existed in the home, as plaintiffs claimed; in deciding whether the policy covered the mold, the causes and types of mold were irrelevant. Having MMA conduct an investigation and produce a report was neither unscrupulous nor unethical, and did not deceive plaintiffs as to whether mold was present in the home.

Finally, plaintiffs argue Hartford failed to affirm or deny coverage of the second mold claim within a reasonable time, pursuant to N.C.G.S. § 58-63-15(11)(e). Plaintiffs resubmitted their mold claim in March 2002, making the same claim as in 2001 but adding the information about the water leaks, which they had neglected to share with MMA in its earlier inspection. Hartford sent MMA back to the plaintiffs' home for a second inspection, and received MMA's report on 17 July 2002, again finding mold in the house. On 5 August 2002, before Hartford had made its determination of whether the mold claim was covered by the policy, plaintiffs' counsel sent Hartford a letter directing it to have no further contact with plaintiffs, and plaintiffs then filed suit on 6 September 2002. Hartford's re-investigation of plaintiffs' earlier mold claim was neither unfair nor deceptive. The re-investigation was made within a reasonable time. The report from the second investigation, more thorough than the first, was provided to Hartford only a few weeks before Hartford was warned not to have any contact with plaintiffs, providing little time for Hartford to determine whether it should cover a claim it had previously denied. The 2002 investigation was not unethical or unscrupulous, and had no tendency to deceive plaintiffs, and thus it was neither unfair nor deceptive.

We conclude that none of the actions taken by Hartford in investigating and deciding the mold claim violated N.C.G.S. § 58-63-15(11)(a), (c), (d), (e), or (n). Therefore, we conclude that plaintiffs have shown no unfair or deceptive practices on the part of Hartford which would support a claim under N.C.G.S. § 75-1.1.

Plaintiffs also cannot show how any of the actions taken by Hartford were the proximate cause of their injury from mold contamination. North Carolina case law defines proximate cause as "a cause

which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred." *Lynn v. Overlook Dev.*, 328 N.C. 689, 696, 403 S.E.2d 469, 473 (1991) (quoting *Adams v. Mills*, 312 N.C. 181, 192, 322 S.E.2d 164, 171 (1984)); *accord Loftis v. Little League Baseball, Inc.*, 169 N.C. App. 219, 222, 609 S.E.2d 481, 484 (2005); *see also Black's Law Dictionary* 234 (8th ed. 2004) (proximate cause is "a cause that directly produces an event and without which the event would not have occurred").

The injury suffered by plaintiffs in this case was the mold contamination of their home. Both parties agree the mold was caused by three events: the installation of the oversized HVAC system, and the two separate water leaks. Those events took place between 1996 and early 1999, prior to Hartford's appearance on the scene. Although the injury, in the form of mold contamination, continued after 1999, the contamination had been ongoing for several years before Hartford became plaintiffs' insurer, and continued for another two years before Hartford was even made aware of the contamination in 2001. Thus, the injury suffered by plaintiffs had been ongoing for approximately five years before Hartford took any of the actions which plaintiffs contend proximately caused them harm.

Keeping in mind the ongoing injury from mold contamination, Hartford's actions are related to the *response* by the parties to the injury. A response to an injury is, by its nature, not the cause of the injury itself; the injury happens first, and the response to the injury follows. The response is thus not the cause of the injury, but rather a reaction to it. Hartford's actions, in the form of the investigation and denial of plaintiffs' mold claim, based on the 2001 report from MMA, were reactions to the ongoing injury suffered by plaintiffs, and not a cause of the injury itself. Furthermore, plaintiffs suffered no new injury from Hartford's actions. Instead, plaintiffs' ongoing mold contamination simply proceeded unabated, as a continuation of the already-existing injury. Accordingly, we hold that Hartford's actions in response to the mold contamination were not a proximate cause of plaintiffs' injury.

Plaintiffs also contend that Hartford's actions harmed them by slowing their remediation of the home. This argument similarly fails, however, because remediation is the response to the injury. Even if Hartford's actions slowed the remediation, those actions slowed only the response to the injury, and did not cause the injury itself. A lack of abatement of an injury is not equivalent to causing the injury itself. In any case, none of Hartford's actions prevented plaintiffs from eliminat-

ing the mold from their home, regardless of the type of mold. The 2001 report from MMA did not specify the type of mold present in the house, and if it had, perhaps plaintiffs would have been more quickly spurred to remediation. But the slower remediation was not the proximate cause of the mold contamination, which had begun in 1996 and continued until after plaintiffs filed suit.

Plaintiffs' final contention, that Hartford's actions precluded them from bringing a claim against their previous insurer, is not persuasive, because Hartford bore no duty to instruct plaintiffs regarding whom to sue, and when. In any event, since plaintiffs did not make this argument to the trial court, we do not consider it on appeal. N.C.R. App. P. 10(b) (2005).

Because plaintiffs cannot produce evidence to show any genuine issue of material fact that Hartford proximately caused their injury from mold contamination, or that Hartford's actions were unfair or deceptive practices, they cannot sustain two essential elements of an unfair or deceptive trade practices claim. Accordingly, Hartford is entitled to summary judgment as a matter of law.

Affirmed.

Judges HUDSON and BRYANT concur.