FLOYD, Circuit Judge,
dissenting:
I agree with the majority that prolonged inaction by an insurer can amount to a waiver of rights under an insurance policy if the insurer has received notice of a breach of a requirement and takes no steps to notify the insured of the breach within a reasonable time. However, in this case, and as a matter of law, Colony could not be said to have waived the endorsement provision of the insurance policy on account of its inaction during the twenty-seven days between its receipt of the inspection report on April 21, 2010, and the burning of the 501 building on May 18, 2010. Accordingly, I think that the district court erred by submitting to the jury Issues 4 and 5 regarding waiver and estoppel in the first instance, and I therefore would reverse the district court’s denial of Colony’s Rule 50(a) motion and respectfully dissent to the majority’s contrary conclusion. I would also remand this case for trial on the sole issue of whether Randolph Bank had knowledge that the utilities were off and failed to notify Colony pursuant to the policy.
*165 I.
It has long been the law in North Carolina that “[u]pon being informed of [a breach], [an insurer] should within a reasonable time ... notiffy] the insured of its determination to cancel the policy!]” Horton v. Home Ins. Co., 122 N.C. 498, 29 S.E. 944, 946 (1898) (emphasis added); see also Dailey v. Integon Gen. Ins. Corp., 75 N.C.App. 387, 331 S.E.2d 148, 154-55 (1985) (insurer’s responsiveness assessed for reasonableness). It is also well established that “time ... may be so short or so long that the court will declare it to be reasonable or unreasonable as a matter of law.” Claus-Shear Co. v. E. Lee Hardware House, 140 N.C. 552, 53 S.E. 433, 434 (1906). Although Claus-Shear Co. was a contractual dispute pertaining to the delivery of goods, the principle regarding temporal reasonableness as a matter of law has been applied widely by North Carolina courts. See, e.g., Harris v. Lamar Co., 150 N.C.App. 437, 563 S.E.2d 642, 2002 WL 1013571, at *4 (N.C.Ct.App. May 21, 2002) (unpublished table decision) (opinion by Wynn, J.) (quoting the above text from Claus-Shear Co. in a property case presenting the question of whether a billboard should be considered “abandoned”). Thus, I see no reason to limit its import in this case.
The North Carolina Supreme Court has not spoken regarding what time period is reasonable for an insurer to receive an inspection report and to process that report and notify the insured of any deficient conditions or breaches. Therefore, we must look to secondary indicia to try to predict how the North Carolina Supreme Court would rule in such a case, including, inter alia, opinions from the North Carolina Court of Appeals and the practices of other states. Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir.2005). As between these two secondary sources, North Carolina’s “intermediate appellate court decisions constitute the next best indicia of what state law is, although such decisions may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide otherwise.” Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 957 F.2d 1153, 1156 (4th Cir.1992) (citation omitted) (internal quotation marks omitted). For the reasons that follow, both North Carolina appellate decisions and the practices of other states, together and separately, yield the conclusion that, as a matter of law, Colony could not have waived the endorsement provision of the insurance policy.
A. North Carolina Law
As the majority notes, waiver requires “(1) knowledge on the part of the insurer of the pertinent facts” and “(2) conduct thereafter inconsistent with an intention to enforce the condition which leads the insured to believe that he is still protected by the policy.” Mabry v. Nationwide Mut. Fire Ins. Co., 108 N.C.App. 37, 422 S.E.2d 332, 334 (1992) (citation omitted) (internal quotation marks omitted). As to the first criterion, the majority claims that Colony had knowledge of the utilities being off at the 501 building simply by virtue of Colony’s receipt of the inspection report on April 21, 2010. See ante at 165 (citing Gouldin v. Inter-Ocean Ins. Co., 248 N.C. 161, 102 S.E.2d 846, 849 (1958) (“[A]n insurance company is presumed to be cognizant of data in the official files of the company, received in formal dealing with the insured.” [1]). But surely, the majority *166 does not mean to extract from Gouldin the notion that an insurer has no time whatsoever after receiving an inspection report to process that report and run it up the corporate flagpole to be reviewed by the appropriate personnel and decision-makers. Indeed, North Carolina’s appellate courts appear to recognize that some time period is necessary between receipt of information and action on that information.
For example, in Nelson v. Hartford Underwriters Insurance Co., an insurer received an inspection report regarding the condition of the insured property on July 17, 2002, but on August 5, 2002 — nineteen days later and “before [the insurer] had made its determination of whether the ... claim was covered by the policy” — “plaintiffs’ counsel sent [to the insurer] a letter directing it to have no further contact with plaintiffs[.]” 177 N.C.App. 595, 630 S.E.2d 221, 233 (2006). Plaintiffs then sued the insurer for failing to affirm or deny coverage “within a reasonable time.” Id. In holding that the insurer did not act unreasonably for not having responded to plaintiffs on or before August 5, the court noted that “[t]he report ... was provided to [the insurer] only a few weeks before [the insurer] was warned not to have any contact with plaintiffs, providing little time for [the insurer] to determine whether it should cover a claim it had previously denied.” Id. Although nineteen days is fewer than twenty-seven days, the court’s use of “only a few weeks” (emphasis added), and the description of nineteen days as “little time,” certainly indicates that the insurer would have been allowed additional time to respond.[2] See also Meadlock v. Am. Family Life Assurance Co., 729 S.E.2d 127, 2012 WL 2891079, at *7 (N.C.Ct.App. July 17, 2012) (unpublished table decision) (in light of a lack of evidence or authority to the contrary, insurer’s delay of four months was not unreasonable); cf. N.C. Gen.Stat. § 20-279.21(b)(3)(a.) (“Suit may not be instituted against the insurer in less than 60 days from the posting of the first notice of the injury or accident to the insurerf.]”).
As to the second waiver criterion, the majority asserts that Colony’s inaction during the twenty-seven days after receiving the inspection report provides the requisite evidence of conduct that is “inconsistent with an intention to enforce the condition,” Mabry, 422 S.E.2d at 334. But this argument is built upon the false premise that Colony had “knowledge” of the condition in the first instance. Neither the majority nor Peterson and Evergreen dispute the accuracy or execution of Colony’s internal review procedure upon receipt of an inspection report. Specifically, Colony describes, at pages 18-19 of its brief, its internal review procedure as follows:
The initial review [by an assistant underwriter] is simply to determine if the inspector has made any recommendations, and to direct the underwriter’s attention to those recommendations. It [is] not the underwriting assistant’s responsibility to compare the inspection results against the conditions of cover *167 age, or to confirm that all conditions of coverage had been met.... [T]he underwriting assistant ... reviewed the ‘recommendations’ portion of the Inspection report on April 21, 2010, and then passed them on to the underwriter .... The ‘Recommendations Section’ of the report ... said nothing about the utilities in the 501 building.
(Paragraph break omitted.)
In view of the above-described (and uncontested) practice at Colony, the majority’s argument that waiver must be found because Colony’s underwriter testified that she would have “immediately” taken steps to cancel the policy had she reviewed the pertinent part of the inspection report is a red herring. In essence, the relevant portion of the inspection report had not been reviewed, and thus, Colony cannot be imputed with knowledge of the information contained in the “recommendations” section of the report until the appropriate personnel — Colony’s underwriter — had reviewed that section. Moreover, neither the majority nor Peterson and Evergreen argue that the internal review procedures at Colony are unreasonable and/or out of the ordinary for the insurance business, and to hold that knowledge was imputed on April 21, 2010, simply because Colony’s assistant underwriter reviewed the inspection report would be to impute knowledge on any individual at Colony who handled the report.
In sum, notwithstanding the majority’s statements of pure law, when North Carolina law — most pertinently Nelson — is applied to the facts of this case, it is unquestionable that North Carolina’s appellate decisions counsel in favor of providing to insurance companies a grace period for processing documents during which waiver cannot be found as a matter of law.
B. Practices of Other States
When looking to the practices of other states, my principal reason for positing that Colony could not have waived the endorsement provision is this Court’s ruling in United Capitol Insurance Co. v. Kapiloff, 155 F.3d 488 (4th Cir.1998). In Kapiloff, this Court held that an insurer was not considered to have waived a condition/requirement of building occupancy that the insured failed to meet prior to a fire destroying the subject property, even though the insurer had knowledge of the insured’s noncompliance via a property inspection and did not inform the insured about the inspection results. Id. at 497. Specifically, the building inspection took place in January and the losses occurred in February and March of the same year. The insurer, however, did not deny coverage to the insured until December of that year. Id. at 491. In holding that the occupancy requirement was not waived, this Court stated the following:
[T]he amount of time it took for [the insurer] to determine that the [insured’s] properties were not in compliance with the policy would not, as a matter of law, be long enough in any event to constitute a waiver of any right under the policy.... In making coverage decisions, an insurance company must be entitled to a sufficient time to collect the facts, evaluate them, and make legal determinations with respect to those facts. These activities require not only field work but also an internal evaluation with a review by appropriate personnel. The one or two months urged by the [the insured] as supporting the finding of waiver or estoppel would hardly provide an insurance company with adequate time to make this kind of a decision, particularly when its liability *168 for a wrongful decision could expose it to the risk of bad faith.
Id. at 497.
As noted above, the fire at the 501 building occurred just twenty-seven days after Colony received the inspection report. That amount of time is shorter than the lower end of the at least “one or two months” contemplated in Kapiloff, during which an insurer is permitted to timely process information regarding the conditions of an insured property. Nonetheless, Peterson, Evergreen, and the majority assert that such a grace period does not apply to Colony merely because Kapiloff is a Maryland case. In the absence of more on-point case law from North Carolina, however, Kapiloff provides strong and logical guidance, given its factual similarity to this case.
Kapiloff was indeed a case arising out of the District of Maryland and applying Maryland law based upon jurisdiction pursuant to 28 U.S.C. § 1332(a), but the relevant portion of the opinion is in no way Maryland-specific. In the entirety of Part V of the Kapiloff opinion, which discusses the grace period before waiver occurs, this Court cited to Maryland law in three different instances. First, this Court cited A/C Electric Co. v. Aetna Insurance Co., 251 Md. 410, 247 A.2d 708, 713 (Md.Ct. App.1968), and McFarland v. Farm Bureau Mutual Automobile Insurance Co., 201 Md. 241, 93 A.2d 551, 554 (1953), for the proposition that “an insurance company may waive a condition of its policy by its conduct when it induces an honest belief that the condition is not required, when the insured is duly misled, and when no extension of coverage results from the waiver.” Kapiloff, 155 F.3d at 497. North Carolina follows a similar scheme. See Brendle v. Shenandoah Life Ins. Co., 76 N.C.App. 271, 332 S.E.2d 515, 518 (1985) (“An insurer may be found to have waived a provision or condition in an insurance policy which is for its own benefit. Implied waiver occurs when the insurer acts in a manner inconsistent with an intention to enforce strict compliance of the contested provision, and the insured is naturally led to believe that the right has been intentionally given up.” (citations omitted)). Second, this Court cited Prudential Insurance Co. v. Brookman, 167 Md. 616, 175 A. 838, 840 (Md.Ct.App.1934), for the proposition that “waiver or estoppel may occur only when it does not create new coverage; an extension of coverage may only be created by a new contract.” Kapiloff, 155 F.3d at 497. Again, North Carolina follows the same rule. See Gore v. Assurance Co. of Am., 208 N.C.App. 239, 704 S.E.2d 6, 10 (2010) (“In North Carolina, the doctrines of waiver and estoppel are not available to broaden the coverage of a policy so as to protect the insured against risks not included therein or expressly excluded from coverage.” (citation omitted) (internal quotation marks omitted)).
Finally — and most relevant here, as it immediately precedes the above block quote from Kapiloff — -this Court cited Monumental Life Insurance Co. v. U.S. Fidelity & Guaranty Co., 94 Md.App. 505, 617 A.2d 1163, 1181 (Md.Ct. Spec.App.1993), for the proposition that “an insurance company that denies coverage or rescinds the policy in bad faith risks liability for that action.” Kapiloff, 155 F.3d at 497. Once again, North Carolina adheres to a nearly identical rule. See Robinson v. N.C. Farm Bureau Ins. Co., 86 N.C.App. 44, 356 S.E.2d 392, 395 (1987) (vacating summary judgment for the defendant insurer and stating, “An insurance company is expected to deal fairly and in good faith with its policyholders----Th[e] evidence is sufficient to establish a tortious bad faith refusal to settle in a timely man *169 ner.” (paragraph break omitted)); see also Thomas v. Ray, 69 N.C.App. 412, 317 S.E.2d 53, 57 (1984) (“We are aware that insurance companies have wrongfully denied coverage in some cases in which bad faith or careless business practices might reasonably be imputed to them.”). In sum, nothing about the relevant portion of our decision in Kapiloff is unique to Maryland law; quite the opposite, North Carolina has the same guidelines to resolve the same types of issues, and thus this Court should ipso facto reach the same result.
Kapiloff, rather than announcing a Maryland-specific rule, provides a much-needed yardstick for assessing reasonableness in a factual scenario identical to the one at play here. It is curious, given their rejection of Kapiloff s at least “one or two months” time period, that Peterson and Evergreen do not advocate for any standard of their own regarding what amount of time would have been reasonable for Colony to respond; on the contrary, they simply contend that North Carolina does not have a hard-and-fast sixty-day rule. Similarly, while not disputing that reasonableness is the sine qua non of whether Colony waived the endorsement provision, the majority does not put forth any amount of time that it believes would be reasonable for Colony to process the information and send notice to Peterson and Evergreen, nor does the majority cite any authority for the idea that twenty-seven days is, as a matter of law, unreasonable and that an insurer should necessarily process information in a more timely fashion.
By casting aside the rule from Kapiloff — and thus ignoring one of the two criteria that we should consider when trying to predict how the North Carolina Supreme court would rule in this case— the majority appears to think that insurance companies operate drastically differently across state lines, thus ignoring the day-to-day realities of the business and the fact that North Carolina, like Maryland, also holds insurers liable for wrongfully denying coverage or rescinding a policy in bad faith. Compare Monumental Life Ins. Co., 617 A.2d at 1181, with Robinson, 356 S.E.2d at 395, and Thomas, 317 S.E.2d at 57. Given that Kapiloff is directly on point and is a published decision of this Court, and that there is not any North Carolina authority to the contrary to even suggest that twenty-seven days is an unreasonable time to respond (but there is authority to suggest that twenty-seven days is not unreasonable, see Nelson, 630 S.E.2d at 233), I would follow Kapiloffs guidance and logic in this case. Accordingly, I do not think that Colony was required to have notified Peterson and Evergreen that the utilities were off at the time that the 501 building burned.
C.
Peterson and Evergreen also contend that Colony should not be permitted to avail itself to a grace period because, at other times, Colony acted more quickly— at times on the same day — to contact policyholders after receiving inspection reports. Specifically, Peterson and Evergreen included in their brief a table showing that Colony had, at other times, responded in a more timely fashion following receipt of an inspection report. Among these examples is an instance from 2009 in which Colony’s underwriter reviewed an inspection report and took action twenty-two days after the assistant underwriter received the report. Based on Peterson and Evergreen’s implication that this time period was reasonable, Peterson and Evergreen would apparently draw the reasonableness line somewhere between day twenty-two and day twenty-seven. Perhaps at day twenty-four. Or *170 maybe day twenty-six, thus leaving Colony on the outside looking in by just twenty-four hours.
The problem with this approach is readily evident: if we were to use a company’s own prior response times as the benchmark for what is reasonable, companies might begin dragging their feet in responding to reports to establish a record of slower response times, thus creating an environment in which prolonged delays become the new business norm — and are even encouraged — due to the fear of future litigation. This would have the opposite effect of ensuring that insurance companies provide timely notice to policyholders of defects or breaches.
II.
The majority did not reach the issue of whether Randolph Bank can recover from Colony because it held that Colony’s purported waiver trumps any alleged knowledge of a material misrepresentation. But because I do not think that Colony waived its rights, as explained above, I would reach the merits of Colony’s defenses to Randolph Bank’s counterclaims.
There are two possible ways for Randolph Bank to recover payments/benefits under the policy: as Peterson and Evergreen’s loss payee or as mortgagee of the 501 building. As a loss payee, however, Randolph Bank stands in the same shoes as Peterson and Evergreen and its rights are coterminous with those of Peterson and Evergreen; thus any successful defense by Colony against Peterson and Evergreen also works as against Randolph Bank. See Wells Fargo Equip. & Fin., Inc. v. State Farm Fire & Cas. Co., 805 F.Supp.2d 213, 218-19 (E.D.Va.2011) (citing Syndicate Ins. Co. v. Bohn, 65 F. 165, 173 (8th Cir.1894)), aff'd, 494 Fed.Appx. 394 (4th Cir.2012). Because Colony has a successful defense against Peterson and Evergreen pursuant to Kapilojf, Randolph Bank is precluded from recovery under the loss-payee theory.
Colony further argues that Randolph Bank cannot recover as an innocent mortgagee of the 501 building because Randolph Bank is responsible for, and/or had knowledge of, Peterson and Evergreen’s noncompliance with the endorsement provision. Colony advances two theories. First, Colony claims that Clayton — whom Randolph Bank engaged to procure the policy — was Randolph Bank’s agent. Colony reasons that because Clayton filled out the insurance application containing the material misrepresentations regarding the status of the utilities, those misrepresentations can be imputed to Randolph Bank and the policy is void as to Randolph Bank. See In re McCrary, 112 N.C.App. 161, 435 S.E.2d 359, 364 (1993) (“Under [the relevant state statute], an insurer may avoid the policy if the insured makes a representation which is both (1) false and (2) material; the misrepresentation need not be fraudulent.” (emphasis deleted)). Although sound in principle, this argument by Colony fails in light of the jury’s finding that Randolph Bank was not responsible for the representations made in the application for insurance. Insofar as Colony failed to file a Rule 50(b) motion after trial, it cannot now challenge the sufficiency of the evidence and the jury’s findings; thus, the agency theory fails.
Second, Colony argues that Randolph Bank itself had actual knowledge of the misrepresentations in the application for insurance that substantially increased the risk of loss but never informed Colony of that knowledge. The jury passed on the question of whether Randolph had actual knowledge based on its conclusion that Colony had waived and/or was estopped from rescinding the endorsement provi *171 sion. The policy states, in relevant part, as follows:
If we [Colony] deny your [Peterson and Evergreen] claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder [Randolph Bank] will still have the right to receive loss payment if the mortgageholder: ... (3) has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.
Randolph Bank and Colony have a material factual dispute regarding communications between Peterson and representatives of Randolph Bank as to whether Randolph Bank had knowledge that the utilities at the 501 building were off.[3] In particular, Colony claims that Randolph Bank was told, via telephone, that the utilities were off at the 501 building; Randolph Bank, on the other hand, claims that it specifically required that a letter be sent to it confirming the state of the utilities at the 501 building and that it never received such letter. Because the jury did not reach this issue, and because this issue is determinative of whether Colony must pay benefits to Randolph Bank, I would remand the case for trial on the sole issue of whether Randolph Bank had knowledge that the utilities were off and failed to notify Colony pursuant to the policy.
III.
For the reasons set forth above, I would reverse the district court’s denial of Colony’s Rule 50(a) motion as to waiver of the endorsement provision and remand the case for trial as to whether Randolph Bank had knowledge that utilities at the 501 building were off. Therefore, I very respectfully dissent.

. I note that Colony did not receive the inspection report from Peterson and Evergreen (the insured), but rather from an independent third party (Safety Resources). Nonetheless, I assume, arguendo, that this difference is immaterial here.

. The majority attempts to discount Nelson by splitting the finest of hairs based on the facts, see ante at 163 n. 4, but provides no case-to-case analyses of its own for its cited cases. Rather, the majority opinion is long on statements of law and instances in which waiver was found, see id. at 162, but devoid of application of that law and the facts of the cited cases to the facts here. Absent guidance from the North Carolina Supreme Court as to what time period is "reasonable” for an insurer to respond under these circumstances, and absent a case with more similar facts and arriving at an alternative outcome, Nelson actually provides an excellent analogy from which much can be gleaned. Any other characterization of Nelson is, quite simply, disingenuous.

. Randolph Bank does not appear to contend that the utilities being off constitutes a "substantial change in risk” for purposes of the policy, but argues only that it did not have any such knowledge.