Murphy-Brown, LLC v. Ace Am. Ins. Co., 2019 NCBC 75.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

MURPHY-BROWN, LLC and
SMITHFIELD FOODS, INC.,

        Plaintiffs,

        v.

ACE AMERICAN INSURANCE
COMPANY, et al.,

        Defendants.

AMERICAN GUARANTEE &
LIABILITY INSURANCE
COMPANY,

        Counterclaim/
        Third Party
        Plaintiff,

        v.

MURPHY-BROWN, LLC and
SMITHFIELD FOODS, INC.,

        Counterclaim
        Defendants,

and

BANDIT 3 LLC DBA CROOKED
RUN FARM, et al.,

        Third Party
        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 2793

**ORDER AND OPINION ON
DEFENDANTS' MOTIONS FOR
JUDGMENT ON THE PLEADINGS**

THIS MATTER comes before the Court upon Defendants Great American Insurance Company of New York ("Great American"), American Guarantee & Liability Insurance Company ("Zurich"), XL Insurance America, Inc. ("XLIA"), ACE American Insurance Company ("ACE") and ACE Property & Casualty Insurance Company's ("ACE P&C"; collectively Great American, Zurich, XLIA, ACE American, and ACE P&C are the "Moving Defendants") Motions for Judgment on the Pleadings. ("Motions," ECF Nos. 81, 83, 108, 159.)

THE COURT, having considered the Motions, the briefs filed in support of and in opposition to the Motions, the arguments of counsel at the hearing on the Motions, and other appropriate matters of record, concludes that the Motions should be GRANTED.

*Middlebrooks Law, PLLC by James Middlebrooks for Plaintiffs Murphy-Brown, LLC and Smithfield Foods, Inc.*

*Reed Smith LLP by Evan T. Knott and John D. Shugrue for Plaintiffs Murphy-Brown, LLC and Smithfield Foods, Inc.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP by Michael W. Mitchell for Plaintiffs Murphy-Brown, LLC and Smithfield Foods, Inc.*

*Cranfill Sumner & Hartzog LLP by Theodore B. Smyth for Defendant Great American Insurance Company of New York.*

*Clyde & Co US LLP by Bruce D. Celebrezze for Defendant Great American Insurance Company of New York.*

*Nexsen Pruet, PLLC by James West Bryan, Brett Becker, and David S. Pokela for Defendant American Guarantee & Liability Insurance Company.*

*Bailey & Dixon, LLP by John T. Crook and David S. Coats for Defendants Ace American Insurance Company and Ace Property & Casualty Insurance Company.*

*Clyde & Co US LLP by Marianne May and Daren McNally for Defendants Ace American Insurance Company and Ace Property & Casualty Insurance Company.*

*Phelps Dunbar LLP by Thomas Contois for Defendant XL Insurance America, Inc.*

*Fox Rothschild LLP by Elizabeth Sims Hedrick and Troy D. Shelton for Defendant XL Insurance America, Inc.*

McGuire, Judge.

## I.  FACTS AND PROCEDURAL BACKGROUND[1]

1.  Plaintiff Murphy-Brown, LLC ("Murphy-Brown") is a Delaware limited liability company with its principal place of business in Warsaw, North Carolina. Plaintiff Smithfield Foods, Inc. ("Smithfield") is a Delaware corporation with its principal place of business in Smithfield, Virginia (collectively, Murphy-Brown and Smithfield are referred to as "Plaintiffs").  (ECF No. 9, at ¶ 11.)  Murphy-Brown's managing member is Smithfield Packaged Meats Corp., a business corporation organized under the laws of Delaware.  (*Id.*)  Smithfield Packaged Meats Corp. is a wholly-owned subsidiary of Smithfield.  (*Id.*)

2.  Murphy-Brown is in the business of producing and growing hogs on company-owned farms and contracting with farms owned by third parties (the contract third-party farms are hereinafter referred to as "Growers").  Fourteen (14)

---

[1] The facts are drawn from the Plaintiffs' Amended Complaint.  ("Amended Complaint," ECF No. 9.)

of the farms at issue in this action are owned by Murphy-Brown and seventy-five (75) are owned by Growers. (*Id.* at ¶ 28.)

3. During the periods relevant to this lawsuit, Plaintiffs were insured under primary general liability policies and primary automobile liability policies. In addition, Plaintiffs were insured under umbrella and excess policies (the "Excess Policies") issued by the Moving Defendants. (*Id.* at ¶¶ 49–50.)

4. Plaintiffs allege that under the language of the Excess Policies, Moving Defendants must "defend and/or reimburse the defense costs incurred by Murphy-Brown in connection with the defense of a claim or suit that [falls] within the coverage of those [Excess] Policies." (*Id.* at ¶ 55.)

5. Murphy-Brown is a defendant in twenty-six (26) lawsuits pending in federal court (hereinafter, the "Federal Litigation"). (*Id.* at ¶ 33.) "A series of bellwether trials in the Federal Litigation commenced in April 2018, and four of those trials went to verdict in 2018." (*Id.* at ¶ 3.) More bellwether trials are scheduled to proceed in 2019. (*Id.*) At the time this lawsuit commenced "the jury verdicts rendered against Murphy-Brown after the bellwether trials in the Federal Litigation total $97,982,400, not including accrued prejudgment or post-judgment interest." (*Id.* at ¶ 48.)

6. "Each complaint in the Federal Litigation alleges that Murphy-Brown's hogs and related farm activities caused the underlying plaintiffs to suffer property damage and/or bodily injury at their homes or residences located near the farms where Murphy-Brown's hogs are grown." (*Id.* at ¶ 35.) Specifically, the complaints

in the Federal Litigation allege, *inter alia,* that "the hog product and operations at the farms and elsewhere cause odor, annoyance, dust, noise, and loss of use and enjoyment of the plaintiffs' real and personal property." (*Id.* at ¶ 36.)

7.   Plaintiffs allege that "[t]he alleged property damage and bodily injury was caused by an 'occurrence,' which one or more of the policies define as an [sic] 'an accident, including continuous or repeated exposure to substantially the same general harmful conditions.'" (*Id.* at ¶ 59.) Plaintiffs further aver that "[t]he alleged property damage and bodily injury was caused by an 'accident,' which one or more of the policies define to include 'continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage."'" (*Id.* at ¶ 60.)

8.   In addition, at least one primary automobile liability policy provides that "[a]ll 'bodily injury', 'property damage' and 'covered pollution cost or expense' resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one 'accident.'" (*Id.* at ¶ 61.)

9.   Plaintiffs allege that the terms of the Excess Policies obligate the Moving Defendants to defend and/or reimburse defense costs and to indemnify Murphy-Brown for damages arising from the Federal Litigation ("Federal Litigation Defense Costs"). (*Id.* at ¶¶ 55–62.)

10.   Moving Defendants either refused to defend Plaintiffs in the Federal Litigation or reserved their rights under the policies. (*Id.* at ¶¶ 67, 73.) In doing so, Moving Defendants take the position that "the operative pollution exclusion provision in their respective Policies applies to [Plaintiffs'] claims for coverage regarding the

Federal Litigation, and that the pollution exclusion[s] purportedly precludes coverage, in whole or in part, for [Plaintiffs]." (*Id.* at ¶ 142.)

11.     Plaintiffs allege that they continue to suffer damages as a result of Moving Defendants' denial of coverage.  These damages include the legal fees and expenses that Plaintiffs are expending to pursue coverage under Moving Defendants' policies in connection with the Federal Litigation.

12.     Plaintiffs initiated this lawsuit on March 5, 2019, by filing a Complaint in the Wake County Superior Court of North Carolina.  (ECF No. 4.) Contemporaneous with the filing of the Complaint, Plaintiffs filed a Notice of Designation to have the case designated as a mandatory complex business case.  (ECF No. 6.)  On March 6, 2019, this action was designated to the North Carolina Business Court (ECF No. 3), and was assigned to the undersigned on March 7, 2019 (ECF No. 2).

13.     On March 19, 2019, Plaintiffs amended their Complaint.  (ECF No. 9.) In the Amended Complaint, Plaintiffs make claims against the Moving Defendants for, among other things, a declaratory judgment that Defendants have a duty to pay Murphy-Brown's Federal Litigation Defense Costs ("Duty to Defend Claim").  (*Id.* at ¶¶ 110–18.)  Plaintiffs also allege that Moving Defendants' "acts, practices and conduct were unfair and/or deceptive in violation of the Unfair Claims Act provisions contained in N.C. Gen. Stat. § 58-63-15 ("UCPA"), and therefore as a matter of law constitute an actionable violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1." ("UDTPA Claim," *Id.* at ¶¶ 132–49.)

14.     Between May 16, 2019 and May 23, 2019, Moving Defendants, along with other Defendants, filed Answers to the Amended Complaint.  (ECF Nos. 72–80.)

15.     On May 28, 2019, Great American filed its Motion for Partial Judgment on the Pleadings (ECF No. 81), and a Brief in Support seeking to dismiss Plaintiffs' Duty to Defend and UDTPA Claims. ("Great American's Brief," ECF No. 82).  On May 28, 2019, Zurich also filed its Motion for Partial Judgment on the Pleadings (ECF No. 83), and a Brief in Support, adopting and incorporating by reference the argument for dismissal of the UDTPA Claim in Great American's Brief (ECF No. 84).

16.     On June 27, 2019, Plaintiffs filed a Consent Motion to Dismiss the Duty to Defend Claim (ECF No. 110), and on June 28, 2019, the Court issued an Order dismissing the Duty to Defend Claim without prejudice.[2]  (ECF No. 112).  On June 27, 2019, Plaintiffs also filed a Combined Response in Opposition to Great American and Zurich's Motions for Partial Judgment on the Pleadings as to the UDTPA Claim. (ECF No. 111.)  On July 8, 2019, Great American filed a Reply Brief (ECF No. 162), and Zurich filed a Reply Brief (ECF No. 163).

17.     On June 27, 2019, XLIA filed its Motion for Partial Judgment on the Pleadings (ECF No. 108), and a Brief in Support, which incorporates Great American's Brief by reference and adds additional arguments for dismissal of the UDTPA Claim.  (ECF No. 109).  On July 8, 2019, ACE and ACE P&C filed a joint Motion for Partial Judgment on the Pleadings (ECF No. 159), and a Joint Brief in

---

[2] The dismissal of the Duty to Defend Claims leaves only the motions for judgment on the UDTPA Claim for decision by the Court.

Support, which incorporates by reference Great American's Brief and XLIA's arguments for dismissal of the UDTPA Claim. (ECF No. 161).

18. On July 31, 2019, Plaintiffs filed a Combined Response in Opposition to the Motions for Partial Judgment on the Pleadings filed by ACE, ACE P&C, and XLIA. (ECF No. 194.) On August 13, 2019, XLIA filed a Reply Brief. (ECF No. 205.)

19. This matter came before the Court for a hearing where the Court heard oral argument from counsel. The Motions are now ripe for decision.

II. ANALYSIS

*A. Standard of Review*

20. "A motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain. When the pleadings do not resolve all the factual issues, judgment on the pleadings is generally inappropriate." *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). "A complaint is fatally deficient in substance, and subject to a motion by the defendant for judgment on the pleadings if it fails to state a good cause of action for plaintiff and against defendant[.]" *Bigelow v. Town of Chapel Hill*, 227 N.C. App. 1, 3, 745 S.E.2d 316, 319 (2013) (citation omitted).

21. The Court may only consider "the pleadings and exhibits which are attached and incorporated into the pleadings." *Davis v. Durham Mental Health/Dev. Disabilities/Substance Abuse Area Auth.*, 165 N.C. App. 100, 104, 598 S.E.2d 237, 240 (2004). The Court must "view the facts and permissible inferences in the light most favorable to the nonmoving party." *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at

499. "All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. All allegations in the non-movant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant." *Id.* (internal citations omitted).

22.     Thus, a Rule 12(c) motion for judgment on the pleadings should be denied "unless it is clear that plaintiff is not entitled to any relief under any statement of the facts." *Praxair, Inc. v. Airgas, Inc.*, 1999 NCBC LEXIS 5, at *8 (N.C. Super. Ct. 1999) (citing *Arroyo v. Scottie's Professional Window Cleaning, Inc.,* 120 N.C. App. 154, 461 S.E.2d 13 (1995) and *Hedrick v. Rains,* 121 N.C. App. 466, 466 S.E.2d 281 (1996)).

### B. Nature of Plaintiffs' Claim for Violation of the Unfair or Deceptive Trade Practices Act

23.     To properly decide Moving Defendants' Motions, the Court must first discuss the theory underlying Plaintiffs' UDTPA Claim. Plaintiffs allege a claim for violation of the UDTPA based on Moving Defendants' alleged violations of the UCPA. (ECF No. 9, at ¶¶ 133–49.) Specifically, Plaintiffs claim that Moving Defendants have engaged in conduct in violation of three distinct provisions of N.C.G.S. § 58-63-15: subpart (1); subpart (11)(a); and subpart (11)(n). (*Id.* at ¶¶ 136–44). Those subparts of § 58-63-15 provide as follows:

> The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:

**(1) Misrepresentations and False Advertising of Policy Contracts**. – Making, issuing, circulating, or causing to be made, issued or circulated, any estimate, illustration, circular or statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby or the dividends or share of the surplus to be received thereon, or making any false or misleading statement as to the dividends or share or surplus previously paid on similar policies, or making any misleading representation or any misrepresentation as to the financial condition of any insurer, or as to the legal reserve system upon which any life insurer operates, or using any name or title of any policy or class of policies misrepresenting the true nature thereof, or making any misrepresentation to any policyholder insured in any company for the purpose of inducing or tending to induce such policyholder to lapse, forfeit, or surrender his insurance.

. . .

**(11) Unfair Claim Settlement Practices.** – Committing or performing with such frequency as to indicate a general business practice of any of the following: Provided, however, that no violation of this subsection shall of itself create any cause of action in favor of any person other than the Commissioner:

    a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

. . .

    n. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

24.    Although not perfectly clear from the pleadings in the Amended Complaint, the Court understands the theory underlying Plaintiffs' claim that Moving Defendants violated the UCPA to be as follows:

(a)    Moving Defendants understood the nature of Plaintiffs' business to be hog farming and knew that Plaintiffs' "central and normal business activity is growing hogs at concentrated animal feeding operations farms located throughout the Eastern part of North Carolina" . . . "involv[ing] the generation and management of hog byproducts." (ECF No. 9, at ¶¶ 134, 143(a), 145.) Hog farming activities produce "odors," and "flies, insects, buzzards, vultures, pests, noise from trucks, light from trucks, or dust created by passing trucks." (*Id.* at ¶¶ 143(c), (d));

(b)    Plaintiffs purchased "general liability and business auto liability insurance coverage [from Moving Defendants] to protect it from liabilities arising from the very type of business activities" that produce these hazards, and that Plaintiffs reasonably "would have understood claims [arising from such hazards produced by hog farming] to be covered under the [Moving Defendants' Insurance Policies]." (*Id.* at ¶ 145); and

(c)    Therefore, by asserting that the exclusions in Moving Defendants' policies for "'man-made or naturally occurring' pollutants" preclude claims for damages caused by the odors, flies, insects, buzzards, vultures, pests, noise from trucks, light from trucks, or dust created by passing trucks generated by Plaintiffs'

normal business activities, Moving Defendants have engaged in conduct that is "wrongful[ ]," "unfair[ ]," and "unreasonable." (*Id.* at ¶¶ 142, 143(b).)

25.    Based on this theory, Plaintiffs allege that

> Each of the [Moving Defendants] has wrongfully and unreasonably asserted . . . that the operative pollution exclusion provision in their respective Policies applies to [Plaintiffs'] claims for coverage . . . and that the pollution exclusion[s] purportedly [preclude] coverage, in whole or in part, for [Plaintiffs]. Such assertions misrepresent to [Plaintiffs] the pertinent facts and provisions of the operative pollution exclusions in their respective Policies, fail to provide a reasonable explanation for refusing coverage on the basis of the operative pollution exclusion in their Policies, and are made for the purpose of inducing or tending to induce [Plaintiffs] to lapse, forfeit, or surrender its insurance coverage under the [Moving Defendants'] Policies.

(*Id.* at ¶ 142.)

26.    In other words, Plaintiffs contend that Moving Defendants' position that Plaintiffs' claims for coverage and indemnity are precluded by the pollution exclusions are: (1) misrepresentations regarding the coverage provided by the Excess Policies; (2) unreasonable explanations for refusing to provide coverage; and (3) intended to induce Plaintiffs to forfeit or surrender the Excess Policies, or to let the Excess Policies lapse.

27.    With this understanding of Plaintiffs' theory and claims, the Court will analyze the specific violations of the UCPA alleged by Plaintiffs.

*C. Plaintiffs' UDTPA Claim based on N.C.G.S. § 58-63-15(1)*

28. "A violation of section 75-1.1 requires proof of three elements: '(1) an unfair or deceptive act or practice, (2) in or affecting commerce,[3] and (3) which proximately caused injury to plaintiffs.'" *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007). Under the UDTPA, "a practice is unfair if it is unethical or unscrupulous" and a practice rises to the level of "deceptive 'if it has the tendency to deceive.'" *Nelson v. Hartford Underwriters Ins. Co.*, 177 N.C. App. 595, 609, 630 S.E.2d 221, 231 (2006) (citation omitted). However, "actual deception is not an element necessary under [N.C.G.S.] § 75-1.1 to support an unfair or deceptive practices claim." *Cullen v. Valley Forge Life Ins. Co.,* 161 N.C. App. 570, 580, 589 S.E.2d 423, 431 (2003).

29. The issue of "whether an act or practice is an unfair or deceptive practice that violates N.C.G.S. § 75-1.1 is a question of law for the court." *Gray v. North Carolina Ins. Underwriting Ass'n,* 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). When no material fact is in dispute, "the court should determine whether the defendant's conduct constituted an unfair or deceptive trade practice." *Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 363, 533 S.E.2d 827, 830 (2000).

30. Plaintiffs allege that Moving Defendants' denial of coverage for the Federal Litigation Defense Costs violates § 58-63-15(1). The North Carolina Supreme Court has held that "a violation of N.C.G.S. § 58-63-15(1) is an unfair and deceptive practice under N.C.G.S. § 75-1.1." *Jefferson-Pilot Life Ins. Co. v. Spencer,* 336 N.C.

---

[3] Moving Defendants do not contend that their denial of Plaintiffs' claims is not in or affecting commerce.

49, 53, 442 S.E.2d 316, 318 (1994) (citing *Pearce v. American Defender Life Ins. Co.,* 316 N.C. 461, 343 S.E.2d 174 (1986)).  In this case, Plaintiffs rely exclusively on the final sentence of § 58-63-15(1) which provides that it is unlawful to "[m]ak[e] . . . any misrepresentation to any policyholder insured in any company for the purpose of inducing or tending to induce such policyholder to lapse, forfeit, or surrender his insurance."

31.  The North Carolina Supreme Court interpreted § 58-63-15(1) in *Jefferson-Pilot*.  336 N.C. at 53, 442 S.E.2d at 318.  There, the Court held that

> This subsection is entitled "Misrepresentations and False Advertising of Policy Contracts."  In keeping with this subtitle and reading the subsection as a whole, we believe *it is directed at false statements connected with sale of insurance policies.*  An insurance company gains no advantage if it incorrectly advises a person as to who is the owner or beneficiary of a policy. It could gain an unfair advantage if it misrepresented to a *potential* customer the terms, benefits or advantages of a policy as well as dividends paid on the policy. We believe this is the evil at which this subsection is aimed. The 'terms' of a policy, as used in this subsection, deal with the conditions and limits of policies.

*Id.* (emphasis added).

32.  In this case, of course, Plaintiffs do not allege any misrepresentations by Moving Defendants when Plaintiffs were "potential customers."  Moving Defendants' conduct in asserting that the pollution exclusions preclude coverage of Plaintiffs' claim is not alleged to have taken place in the context of the sale of the Excess Policies. On the contrary, the allegations in the Amended Complaint are that Plaintiffs submitted claims to Moving Defendants for the Federal Litigation Defense Costs and

Moving Defendants, in turn, denied coverage based on express exclusions found in the Excess Policies. Therefore, the alleged misrepresentations were made under the Excess Policies after they were purchased by Plaintiffs and in effect.

33.     Plaintiffs appear to argue that Moving Defendants' declaration that the pollution exclusions preclude coverage for Plaintiffs' claims are misrepresentations, made with the intent to induce Plaintiffs to simply accept that decision, "forego coverage under [the Excess Policies]," and that the misrepresentations were thereby meant to induce Plaintiffs to "lapse, forfeit, or surrender" Plaintiffs' rights under the Excess Policies in violation of § 58-63-15(1). (ECF No. 111, at pp. 15–16.) Plaintiffs do not cite any authority in support of their position. The Court concludes that Plaintiffs' argument is misplaced. Under its most logical reading, § 58-63-15(1) was not intended to apply to the conduct other than conduct related to an insurance carrier's attempts to influence a policyholder or potential policyholder to forfeit their current policy of insurance; or permit the current policy to lapse as part of the insurance carrier's attempts to sell the policyholder a new insurance policy.

34.     Viewing the facts and permissible inferences in the light most favorable to Plaintiffs, the Amended Complaint fails to state a viable cause of action against Moving Defendants for a violation of the UDTPA based on N.C.G.S. § 58-63-15(1). Therefore, Moving Defendants' Motions for judgment on the pleadings as to Plaintiffs' claim for violation of the UDTPA based on § 58-63-15(1) should be GRANTED.

*D. Plaintiffs' UDTPA Claims based on N.C.G.S. § 58-63-15(11)*

35.     Plaintiffs also allege that Moving Defendants' denial of Plaintiffs' claims based on the pollution exclusions is an unfair trade practice because the denial violates §§ 58-63-15(11)(a) and (n) of the UCPA.  (ECF No. 9, at ¶ 137; ECF No. 111, at pp. 7–11.)  In *Gray,* the Supreme Court of North Carolina held that when an insurance company engages in conduct that violates N.C.G.S. § 58-63-15(11)(f), it also "engages in conduct that embodies the broader standards of N.C.G.S. § 75-1.1 because such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers."  *Gray,* 352 N.C. at 71, 529 S.E.2d at 683.  The Court of Appeals subsequently held that "[i]t follows that the other prohibited acts listed in N.C.G.S. § 58-63-15(11) are also acts which are unfair, unscrupulous, and injurious to consumers, and that such acts therefore fall within the 'broader standards' of N.C.[G.S.] § 75-1.1."  *Country Club of Johnston County, Inc. v. United States Fid. & Guar. Co.,* 150 N.C. App. 231, 246, 563 S.E.2d 269, 279 (2002).  Therefore, an insurer's violation of any subpart of "N.C.G.S. § 58-63-15(11) constitutes a violation of N.C.G.S. § 75-1.1 as a matter of law, without the necessity of an additional showing of frequency indicating a 'general business practice.'"  *Gray,* 352 N.C. at 71, 529 S.E.2d at 683 (citing N.C.G.S. § 58-63-15(11)).  Moving Defendants do not argue otherwise.

36.     Moving Defendants argue that: Plaintiffs do not allege any misrepresentation of deceptive statements by Moving Defendants; Plaintiff do not allege "substantial aggravating circumstances" that would turn this contract

interpretation dispute into an unfair or deceptive trade practice; and Plaintiffs do not allege any cognizable injury arising from Moving Defendants' denial of their claims or that the denials proximately caused Plaintiffs' injury. (ECF No. 82, at pp. 18–24; ECF No. 109, at pp. 5–10; ECF No. 161, *passim*.)

> *i. Plaintiffs fail to sufficiently allege a violation of N.C.G.S. § 58-63-15(11)(a).*

37. Section 58-63-15(11)(a) prohibits insurers from "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue." Plaintiffs contend "that [Moving Defendants'] assertions that the 'pollution exclusion[s] purportedly [preclude] coverage' [of the Federal Litigation Defense Costs] 'misrepresent to Murphy-Brown' the 'pertinent facts and provisions in their respective Policies'" in violation of N.C.G.S. § 58-63-15(11)(a). (ECF No. 111, at p. 10.)

38. Moving Defendants argue that Plaintiffs' allegations supporting their § 58-63-15(11)(a) claim "rest[] solely on allegations showing that [P]laintiffs claim to have a disagreement with [Moving Defendants]." (ECF No. 162, at p. 9.) Moving Defendants further contend that Plaintiffs fail to provide any "specific alleged misrepresentation" that is actionable under the UCPA. (ECF No. 82, at pp. 23–24; ECF No. 162, at p. 9.)

39. The Court has found no North Carolina appellate authority defining "misrepresentation" in the context of § 58-63-15(11) or any of its subparts. However, the Court finds our appellate courts' definition of "misrepresentation" in the context of fraud persuasive. For a fraud claim to survive a motion for judgment on the

pleadings, "[a] subsisting or ascertainable fact, as distinguished from a matter of opinion or representation relating to future prospects, must be misrepresented. And generally, the misrepresentation must be definite and specific, but the specificity required depends upon the tendency of the statements to deceive under the circumstances." *Ragsdale,* 286 N.C. at 139, 209 S.E.2d at 500 (internal citations omitted).

40.     Additionally, in the context of misrepresentations that form the basis for an unfair or deceptive trade practice, "a party's words or conduct must possess the 'tendency or capacity to mislead' or create the 'likelihood of deception.'" *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 254, 507 S.E.2d 56, 64 (1998) (internal citations and quotations omitted).

41.     The Court agrees with Moving Defendants' interpretation of the allegations in the Amended Complaint. The Amended Complaint is completely devoid of any specific "misrepresentation" made by any Moving Defendant. Rather, Plaintiffs allege that their interpretation of the pollution exclusions in the Excess Policies and their opinion as to the exclusions' inapplicability to Plaintiffs' claims is the only reasonable one and, therefore, Moving Defendants' interpretation must constitute a misrepresentation as to the Excess Policies' coverages. In other words, instead of alleging a specific misrepresentation, Plaintiffs effectively allege that Moving Defendants' counter-interpretation of the pollution exclusions and their applicability to Plaintiffs' claims is a "misrepresentation."

42.     Plaintiffs cite *Guessford v. Pennsylvania Nat. Mut. Cas. Ins. Co.,* 918 F. Supp. 2d 453, 464 (M.D.N.C. 2013) in support of their position that they have sufficiently pleaded a violation of subsection 11(a). (ECF No. 111, at p. 11.) However, Plaintiffs' reliance on *Guessford* is misplaced.

43.     In *Guessford,* the district court denied an insurer's motion for judgment on the pleadings as to an insured's UDTPA claim that was based on a violation of § 58-63-15(11)(a). 918 F. Supp. 2d. at 464. In support of the insured's allegation that the insurer violated § 58-63-15(11)(a), a correspondence between the insured and insurer was attached to the complaint. *Id.* In the correspondence, the insurer stated: "a voluntary mediation could be set only 'if the Worker's Compensation carrier was in agreement and in a position to resolve their lien.'" *Id.* The court noted that "[m]aking mediation contingent on the participation of [the insured's] worker's compensation insurer [was] not a requirement under the insurance contract." *Id.* Therefore, the court held the insured, "supported by attached documents," sufficiently alleged that the insurer "misrepresented policy provisions and the law governing those provisions in violation of Section 58-63-11(a)." *Id.*

44.     Plaintiffs' allegations in the Amended Complaint fall short of the specific misrepresentation provided by the insured in *Guessford.* Plaintiffs fail to provide anything beyond conclusory allegations. Conversely, the insured in *Guessford* attached to the complaint a correspondence from the insurer that unambiguously misrepresented the terms of the insurance contract. Plaintiffs' allegations simply fail

to demonstrate the same indicia of a misrepresentation consistent with the correspondence before the court in *Guessford.*

45. On the other hand, North Carolina's Court of Appeals held that an insurer did not engage in an unfair or deceptive practice in violation of § 58-63-15(11)(a) by asserting that a specific exclusion precluded coverage of an insured's claim. *Nelson,* 177 N.C. App. at 610–11, 630 S.E.2d at 231–32. In *Nelson,* the Court reviewed the policy language at issue and the insurer's letter denying coverage under two separate exclusions and concluded that the insurer "did not misrepresent [the insurer's] insurance policy." *Id.* at 610–11, 630 S.E.2d at 232. The court held that the "denial letter was not unethical or unscrupulous, nor did it have the tendency to deceive plaintiffs, and therefore it was neither unfair nor deceptive." *Id.* at 611, 630 S.E.2d at 232.

46. Here, Plaintiffs do not provide the specific language at issue from any of the pollution exclusion provisions in the Excess Policies or explain how Moving Defendants' denial misrepresents such exclusions. The Court notes that Plaintiffs did not attach to the Amended Complaint nor provide to the Court any of Moving Defendants' denial letters, or any document similar to the one presented to the court in *Nelson.* Nevertheless, Plaintiffs fail to allege that anything specifically in Moving Defendants' denial letter misrepresents pertinent facts regarding the operative Excess Policies.

47. Rather, Plaintiffs allege, generally, that Moving Defendants are "wrongfully and unfairly" using the pollution exclusions to deny coverage for the

Federal Litigation. Like the court in *Nelson,* the Court finds that Moving Defendants' denial of coverage based on their assertion of exclusions in the Excess Policies is not "unethical or unscrupulous." In the absence of an actual, specific misrepresentation or precedent supporting the proposition that a disagreement over a policy exclusion equates to a misrepresentation, the Court must conclude that the denial of coverage based on an exclusion does not have a "tendency to deceive." *See id.*

48. The Court finds that Plaintiffs' have not alleged that Moving Defendants misrepresented "the pertinent facts or insurance policy provisions relating to coverages at issue" in violation of N.C.G.S. § 58-63-15(11)(a). Accordingly, Moving Defendants' Motions for judgment on the pleadings as to Plaintiffs' claim for violation of the UDTPA based on § 58-63-15(11)(a) should be GRANTED.

> *ii. Plaintiffs fail to sufficiently allege a violation of N.C.G.S. § 58-63-15(11)(n).*

49. Section 58-63-15(11)(n) prohibits insurers from "[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." On the same grounds that Plaintiffs allege Moving Defendants have engaged in unfair or deceptive conduct by relying on the pollution exclusions to deny coverage of Plaintiffs claims, they allege that Moving Defendants have "wrongfully and unreasonably" failed "to provide a reasonable explanation for refusing coverage on the basis of the operative pollution exclusion[s]." (ECF No. 9, at ¶ 142.)

50. Moving Defendants argue that Plaintiffs have not pleaded with specificity what explanation Moving Defendants have given that could be considered

"unreasonable" in violation of § 55-63-15(11)(n). (ECF No. 82, at p. 23.) Moreover, Moving Defendants contend they "did, in fact, provide a reasonable basis for declining coverage – the pollution exclusion[s]." (ECF No. 162, at pp. 6–7.) Like Plaintiffs' claim for alleged violations of § 58-63-15(11)(a), Moving Defendants argue that Plaintiffs' claim for violation of § 58-63-15(11)(n) amounts to a "disagreement as to the scope of coverage between the parties to the insurance policies." (ECF No. 82, at p. 22.)

51. The Court concludes Plaintiffs' UDTPA claim based on violation of N.C.G.S. § 58-63-15(11)(n) is nothing more than a repackaging of the same contention underlying their other UDTPA claims—that Moving Defendants' position that the pollution exclusions apply to Plaintiffs' claims is, in and of itself, an unreasonable explanation for denial of coverage. (ECF No. 111, at pp. 7–10.) However, Plaintiffs fail to cite any precedent supporting their argument that an insurer's assertion that an exclusion in an insurance contract precludes coverage is tantamount to an "unreasonable explanation" for denying coverage.

52. In support of their argument that they sufficiently allege a violation of § 58-63-15(11)(n), Plaintiffs rely on *Country Club of Johnston County, Inc.* (ECF No. 111, at p. 9.) In *Country Club of Johnston County*, following a trial,

> the jury determined that [the insurer] "prematurely and improperly" determined it would deny the Club's claim prior to conducting a "meaningful investigation"; that [the insurer] "misrepresented" to the Club that it would investigate the claim and specifically, the application of Exclusion C when it had already concluded it would deny the claim; that [the insurer] "unfairly" and "improperly" sent a reservation of rights letter based on Exclusion C

without having "an adequate or documented basis to reverse [the claims examiner]'s position to not reserve rights as to Exclusion C . . . "; and that [the insurer] solicited an opinion letter from counsel only after having made its decision regarding coverage.

150 N.C App. at 246–47, 563 S.E.2d at 279.

53.     The Court of Appeals upheld the trial court's conclusion that the insurer violated § 75-1.1, in part, because the insurer "arguably violated" subpart (11)(n), although it is not clear from the opinion what specific facts formed the basis for the court's conclusion. *Id.*

54.     The Court of Appeals' holding in *Country Club of Johnston County* is inapposite. First, it was decided on a challenge to a verdict entered by the trial court after a trial. More significantly, the insurer's conduct in *Country Club of Johnston County* was far beyond any conduct alleged by Plaintiffs in this case. Contrary to the insurer's actions in *Country Club of Johnston County*, Plaintiffs' allegations demonstrate that Moving Defendants took the position that the pollution exclusions applied from the outset and maintain that position. Moreover, Moving Defendants have provided a "basis" in the insurance policy—the pollution exclusions—for denying coverage. Accordingly, Moving Defendants' denial of coverage based on the pollution exclusions does not appear to be an "unwarranted refusal to pay." *See id.* at 247, 563 S.E.2d at 279.

55.     Plaintiffs also rely on *Miller v. Nationwide Mut. Ins. Co.,* 112 N.C. App. 295, 435 S.E.2d 537 (1993). (ECF No. 111, at p. 8–9.) In *Miller,* the North Carolina Court of Appeals held that an insured sufficiently alleged a UDTPA claim based on

violations of N.C.G.S § 58-63-11(n). 112 N.C. App. at 305, 435 S.E.2d at 544. The court found the following factual allegations in the complaint, among others, to be sufficient to withstand a challenge at the dismissal stage:

> [Insurer] had sufficient information to determine that a substantial portion, if not all, of the UIM coverages available to [insured], would be properly due and payable to [insured]; nevertheless, . . . [insurer] unreasonably withheld payments to [insured.]
>
> . . .
>
> [Insurer] withheld payment of $ 150,000 of the remaining funds it acknowledged was due [insured.]
>
> . . .
>
> [Insurer] has continued to refuse payment . . . without just cause or excuse.
>
> . . .
>
> [Insurer] has failed to identify any policy provision and [insurer] has cited no case law or statutory authority that supports its refusal to pay[.]

*Id.* at 303–04, 435 S.E.2d at 544.

56. Plaintiffs' factual allegations in the Amended Complaint fall well short of the allegations present in *Miller*. Specifically, the insured in *Miller* alleged the insurer acknowledged that the insured was due payments under the policy but refused to make the payments or explain the basis for the refusal. By contrast, Plaintiffs do not allege that Moving Defendants acknowledged that Plaintiffs are due payments under the Excess Policies but, rather, that Moving Defendants have consistently taken the position that no payment is due to the Plaintiffs because the

pollution exclusions bar coverage of Plaintiffs' claims. Moreover, unlike the allegations in *Miller* that the insurer refused payment without "just cause or excuse" and failed to identify any policy provision to support its refusal, Moving Defendants have cited to and relied upon a specific provision in the Excess Policies.

57. The Court notes, again, that no reservation of rights letter or denial letter is attached to the Amended Complaint, nor have Plaintiffs provided a recitation of the explanation given by the Moving Defendants to support Plaintiffs' conclusory allegation that Moving Defendants failed to provide a "reasonable explanation."

58. Therefore, to the extent Plaintiffs base their UDTPA Claim on a violation of subpart 11(n), Plaintiffs' claim should be DISMISSED.[4]

III. CONCLUSION

THEREFORE, it is ORDERED that Moving Defendants' Motions for judgment on the pleadings as to Plaintiffs' Ninth Cause of Action for violation of the UDPTA is GRANTED, and that claim is DISMISSED.

SO ORDERED, this the 16th day of December, 2019.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
for Complex Business Cases

---

[4] The Court notes that "a plaintiff is not required to prove a violation of [the UCPA] in order to succeed on an independent claim under N.C. Gen. Stat. § 75-1.1." *Country Club of Johnston County*, 150 N.C. App. at 246, 563 S.E.2d at 279. However, it does not appear that Plaintiffs base the UDTPA Claim on anything other than Moving Defendants' alleged violations of the UCPA.